**AMERICAN AIRLINES, Inc.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Slick Airways, Inc., The Flying Tiger Line, Inc., Intervenors.

**TRANS WORLD AIRLINES, Inc.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Slick Airways, Inc., Riddle Airlines, Inc., The Flying Tiger Line, Inc., Intervenors.

**EASTERN AIR LINES, Inc.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Slick Airways, Inc., Riddle Airlines, Inc., The Flying Tiger Line, Inc., Intervenors.

**UNITED AIR LINES, Inc.,**
Petitioner,

v.

**CIVIL AERONAUTICS BOARD,**
Respondent,

Slick Airways, Inc., Riddle Airlines, Inc., The Flying Tiger Line, Inc., Intervenors.

Nos. 12688, 12692, 12693, 12696.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 4, 1955.

Decided Feb. 9, 1956.

Petition for Rehearing Denied March 8, 1956.

Edgerton, C. J., dissented.

Messrs. Howard C. Westwood, Washington, D. C., and Robert L. Stern, with whom Messrs. James Francis Reilly and Peter S. Craig, Washington, D. C., were on the brief, for petitioners in Nos. 12,-688 and 12,696. Mr. John W. Douglas, New York City, also entered an appearance for petitioner in No. 12,688.

Messrs. William Caverly, Washington, D. C., E. Smythe Gambrell and W. Glen Harlan, Atlanta, Ga., filed a brief on behalf of petitioners in Nos. 12,692 and 12,693. Mr. James K. Crimmins, New York City, also entered an appearance for petitioner in No. 12,692.

Mr. O. D. Ozment, Chief, Litigation and Research Division, Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, and John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, were on the brief, for respondent. Mr. Charles H. Weston, Atty., Department of Justice, also entered an appearance for respondent.

Mr. Robert J. Corber, Washington, D. C., with whom Mr. William E. Miller, Washington, D. C., was on the brief, for intervenor Slick Airways, Inc., in all cases.

Mr. Elmer E. Batzell, Washington, D. C., with whom Mr. Tobias J. Berman, Washington, D. C., was on the brief, for intervenor Flying Tiger Line, Inc., in all cases.

Mr. James L. Highsaw, Jr., Washington, D. C., entered an appearance for intervenor Riddle Airlines, Inc., in Nos. 12,692, 12,693 and 12,696.

Before EDGERTON, Chief Judge, and PRETTYMAN and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Petitioners are air carriers who hold certificates of public convenience and necessity authorizing the transportation of mail, and who transport so-called "surface mail" under an experiment[1] now being conducted by the Postmaster General.

Shortly after the announcement of the surface mail program, numerous non-certificated air carriers, together with Slick, Flying Tiger and Riddle (present intervenors), who are certificated cargo carriers, petitioned the Civil Aeronautics Board for the issuance of exemption orders under Section 416(b) of the Civil

---

[1]. The legality of this experiment has been determined by this court in Atchison, Topeka and Santa Fe Railroad v. Summerfield, 97 U.S.App.D.C. 203, 229 F.2d 777, wherein we indicated that we were unable to find any prohibition of the present experimental program, while we do find statutory provisions broad enough to encompass it within their terms.

Aeronautics Act [2] permitting them to join in the experiment and to transport surface mail. Certain air carriers challenged the Board's legal power to permit transportation of surface mail by exemption and to fix rates under exemption authority. After argument the Board concluded that it had such power, but further concluded that "it does not appear that there is any need at this time for the participation of non-certificated-for-mail carriers in the movement of first class and surface mail in order to insure the success of the Post Office experiment." Petitions for reconsideration were subsequently denied.

In August, 1954, United Air Lines petitioned the Board for an extension of the rates fixed for transportation of the surface mail. The Postmaster General filed a statement alleging that an additional period of experimentation was required and that further studies should be made. Present intervenors then filed new petitions for exemption, and it is these petitions and the pursuant orders which are being challenged here. The petitions, in substance, traced the development of the surface mail program and alleged *inter alia* that the cargo carriers could contribute to the experiment and the further studies, in that they were already operating and in a position to transport mail on their flights, that the results of services by the cargo carriers would prove useful in future planning and would be in the public interest, that the experiment was of short-term duration, and that compliance with the certification provisions of the Act in these circumstances would constitute an undue burden upon them.

Answers to these applications were filed by present petitioners, stating that the Board lacked authority to issue exemptions authorizing the transportation of mail, that no sufficient change in circumstances had occurred to warrant any action different from the earlier denial of the cargo carriers' prior exemption applications, that the circumstances alleged in the petitions did not establish any legal basis for exemption, and that the issuance of exceptions would amount to an abuse of the Board's discretion. The Post Office took the position that additional volume of mail was anticipated, hence the Board should make available the additional facilities of the cargo carriers. The Postmaster General's answer pointed out that the services of the cargo carriers would prove invaluable in emergency situations and afford protection against unanticipated or substantial interruptions in service. It further stated that the use of the cargo carriers would "add to the knowledge and experience sought by the Department to provide a basis for its future recommendations with respect to this special class of air transportation."

In May, 1955, the Board issued its decision and orders granting exemptions to the present intervenors.

Congress in contemplating the development of air transportation in this country has clearly indicated that the system of operations therein was to be based on certificates of public convenience and necessity. Along with the many basic provisions relating to air carriage is included an exemption provision. We find this provision in Section 416 of the Act, which reads:

"Classification

"(a) The Authority [Board] may from time to time establish such just and reasonable classifications or groups of air carriers for the purposes of this title as the nature of the services performed by such air carriers shall require; and such just and reasonable rules, and regulations, pursuant to and consistent with the provisions of this title, to be observed by each such class or group, as the Authority [Board] finds necessary in the public interest.

2.  52 Stat. 973, as amended by 62 Stat. 493, 65 Stat. 65, 66 Stat. 628, 49 U.S.C.A. §§ 401 et seq., 496(b).

**"Exemptions**

"(b) (1) The Authority [Board], from time to time and to the extent necessary, may (except as provided in paragraph (2) of this subsection) exempt from the requirements of this title or any provision thereof, or any rule, regulation, term, condition, or limitation prescribed thereunder, any air carrier or class of air carriers, if it finds that the enforcement of this title or such provision, or such rule, regulation, term, condition, or limitation is or would be an undue burden on such air carrier or class of air carriers by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest.

"(2) The Authority [Board] shall not exempt any air carrier from any provision of subsection (*l*) of section 401 of this title, except that (A) any air carrier not engaged in scheduled air transportation, and (B) to the extent that the operations of such air carrier are conducted during daylight hours, any air carrier engaged in scheduled air transportation, may be exempted from the provisions of paragraphs (1) and (2) of such subsection if the Authority [Board] finds, after notice and hearing, that, by reason of the limited extent of, or unusual circumstances affecting, the operations of any such air carrier, the enforcement of such paragraphs is or would be such an undue burden on such air carrier as to obstruct its development and prevent it from beginning or continuing operations, and that the exemption of such air carrier from such paragraphs would not adversely affect the public interest: *Provided,* That nothing in this subsection shall be deemed to authorize the Authority [Board] to exempt any air carrier from any requirement of this title, or any provision thereof, or any rule, regulation, term, condition, or limitation prescribed thereunder which provides for maximum flying hours for pilots or copilots."

█ It may well be argued that Congress, having set out this pattern of development with respect to any air carrier or class of air carrier, has left the whole matter to the judgment of the agency. At any rate, when the reviewing authority of the courts is properly invoked it becomes our duty to inquire whether the action of the agency has " 'warrant in the record' " and "a 'reasonable basis in law' ".[3] This is particularly pertinent in the instant case since it is contended that the findings of the Board did not conform to requirements of the exemption section of the Act.

Upon an examination of the record we find that the Board indicated that the proceedings now in progress on the certificate applications of the cargo carriers to transport mail would require substantial time for their completion; that the surface mail experiment appears to be of a temporary nature; and that it is unlikely that final determinations could be made on the pending certificate applications, or on applications for interim authority to transport only surface mail, in time to permit the Post Office Department to obtain the benefits of the experiment. The Board further found that undue burden would result from a requirement of interim certification procedures or the holding of evidentiary hearing on the exemption applications.

█ In considering the problem as a whole we must first determine whether or not the Civil Aeronautics Board has the power under Section 416(b) of the Act to authorize by exemption the

3. Unemployment Compensation Commission of Territory of Alaska v. Aragan, 1946, 329 U.S. 143, 153, 154, 67 S.Ct. 245, 250, 91 L.Ed. 136. Cf. Administrative Procedure Act, § 10, 5 U.S.C.A. § 1009.

transportation of mail by carriers not certificated to transport mail.

It would seem that, from a reading of the pertinent section, there is no exception with respect to exemption made or intended in the case of mail. Thus, Section 416(b) permits exemption for the transportation of persons and property, including mail. This position is confirmed by Section 416(b) (2), as therein the exceptions to the exemption rule of 416(b) are set out. Mail is not among those exceptions.

■ Secondly, we must consider whether or not the Board's findings [4] of "unusual circumstances," "undue burden" and "public interest," which are statutory prerequisites to the granting of exemptions under Section 416(b), have any reasonable or lawful basis.

We have set forth in some detail the findings of the Board. We think it is clear beyond question that permitting the Postmaster General to experiment with the services of the cargo carriers in the transportation of surface mail is in the public interest. We refer, on this point, to that part of the opinion of the Board which reads:

"4. The availability of the cargo services of this applicant will broaden the base of the experiment and will correspondingly add to the knowledge and experience sought by the Department to provide a basis for its future recommendations with respect to this special class of air transportation."

We think too that the necessary findings of "undue burden" are clearly set out in the Board's opinion, wherein the Board, in discussing the nature of the surface mail air experiment, states:

"There is no serious difficulty in finding that to subject these applicants to the requirements of section 401(a) in these particular circumstances would be an undue burden on them. All of them are in pending proceedings to determine whether they should be granted certificates to transport mail. Considering the temporary nature of the surface mail by air experiment, all parties concerned would be subjected to undue hardship if the applicants were required to suffer the delays incident to another certificate proceeding for the purpose of permitting them to participate in the experiment for an interim period pending the disposition of their aforementioned certificate cases. These cases will undoubtedly require a protracted period of time for decision and it is unlikely that they will be determined in time to do the Postmaster General or the public interest much, if any, good in the present surface mail experiment, assuming, of course, that certificates would be granted. Much the same objection as to the time element and duplication of hearings can be said with respect to the contention of the opposing carriers that there should be an evidentiary hearing on the applications for exemption."

These cargo carriers have available space in which surface mail may be carried. The Postmaster General desires their services on an experimental basis. The experiment appears to be limited to a reasonable time. Certification proceedings on either a permanent or interim basis could not be completed in time to enable the cargo carriers to participate in the experiment. We think there are "unusual circumstances" affecting operation, within the ordinary meaning of the term.

■ With respect to the contention that the Board is required to hold an evidentiary hearing in proceedings under Section 416(b), we refer again to the Eastern Airlines case, supra at note

---

4. This court has pointed out that the statutory words " 'if it finds' " means little more than " 'if it believes.' " Cf. Eastern Airlines, Inc., v. Civil Aeronautics Board, 87 U.S.App.D.C. 331, 185 F.2d 426, 428, vacated 1950, 341 U.S. 901, 71 S.Ct. 613, 95 L.Ed. 1341.

4, wherein this court has disposed of this claim adversely to this contention.

Certain of the intervenors argue, and with some force, that the exemptive power conferred by Section 416 extends to any air carrier, with but one exception, that being a prohibition against exempting air carriers from certain of the labor provisions of the Act, Section 416(b) (2). We do not find it necessary to pass on this question, preferring to rest our decision on the fact that unusual circumstances do exist which, the requisite qualifications of undue hardship and public interest being present, give ample authority for the issuance of the orders complained of.

It follows that the orders appealed from should be and are

Affirmed.

PRETTYMAN, Circuit Judge (concurring).

I concur in the result and in the opinion except that the question seems to me closer than my brother BASTIAN indicates it is to him. If inability to participate in a given carriage because of the time necessarily consumed in a certification proceeding constitutes an unusual circumstance in the operation of the applying carrier, and an undue burden upon it, very little is left of the requirements for certification. The certification section of the Act and the exemption section, under that view, would appear to be merely two alternative methods by which the Board can authorize operation. It seems to me Congress must have meant the exemption provision to be more restricted than that. On the other hand, not to participate in a given carriage, because of lack of a certificate and inability to get one promptly, does seem to be an undue burden, although it is due perhaps to the limited extent of the carrier's operation rather than to unusual circumstances. And I think, so far as I am able to ascertain, that many exemptions from the certification requirements have been granted upon some such theory. At this point the weight of the administrative construction falls into the scale. And that weight tips the balance, in my view, in favor of affirmance. I realize too that this case does not necessarily rest upon so broad a concept of the exemption requirements as I have posited, because the experimental carriage of the mail with which this case is concerned may well be completed before certification proceedings can be completed. In such event denial of an exemption would be a total and final deprivation of participation. That is not the case in the usual application for exemption.

EDGERTON, Chief Judge (dissenting).

That the intervenors, non-certificated air carriers, cannot participate in certain air carriage unless the Board exempts them from the requirement of a certificate, is a normal feature of the system Congress created. In my opinion it does not authorize the Board to deviate from the system. Congress might, of course, have given the Board unlimited discretion to grant exemptions, but Congress has not done so. Section 416 (b) (1) authorizes the Board to exempt a carrier or class of carriers from a requirement of the Act when the Board finds that enforcement "would be an undue burden on such air carrier or class of air carriers by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest." 52 Stat. 1005, 49 U.S.C.A. § 496(b) (1).

The Board's exemption of the intervenors cannot be sustained on the theory of "an undue burden * * * by reason of the limited extent of * * * the operations * * *", because the Board made no such finding. It found that enforcement "would be an undue burden upon the applicants by reason of the unusual circumstances affecting their operations and is not in the public interest." That certification takes time, and that surface-mail experiments may be brief, are circumstances affecting all

uncertificated air carriers. It seems to me to follow that these are not "unusual circumstances affecting" the carriers the Board has exempted. Moreover, these are not circumstances affecting the "operations" of the carriers. For these and other reasons I think the Board exceeded its authority in granting the exemptions.