AMERICAN AIRLINES, Inc.,
Petitioner,

National Airlines, Inc., Intervenor,

v.

CIVIL AERONAUTICS BOARD, Respondent,

Capitol Airways, Inc., Quaker City Airways, Inc., Aircoach Transport Association, and Independent Military Air Transport Association, Intervenors.

TRANS WORLD AIRLINES, Inc.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

EASTERN AIR LINES, Inc., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

PAN AMERICAN WORLD AIRWAYS,
Inc., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

DELTA AIR LINES, Inc., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

UNITED AIR LINES, Inc., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

CONTINENTAL AIR LINES, Inc.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

NORTHWEST AIR LINES, Inc.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

ALLEGHENY AIRLINES, Inc., et al.,
Petitioners,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

WESTERN AIR LINES, Inc.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

CAPITAL AIRLINES, Inc., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

BRANIFF AIRWAYS, Inc., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

PACIFIC NORTHERN AIRLINES, Inc.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

ABILENE & SOUTHERN RAILWAY
COMPANY et al., Petitioners,

v.

CIVIL AERONAUTICS BOARD,
Respondent.

Nos. 13044, 13045, 13048, 13052, 13054, 13061, 13063, 13064, 13068, 13116–13118, 13120, 13121.

United States Court of Appeals
District of Columbia Circuit.

Argued June 4, 1956.

Decided July 19, 1956.

Petitions for Rehearing Denied
Sept. 19, 1956.

Mr. Howard C. Westwood, Washington, D. C., with whom Mr. Clifton J. Stratton, Jr., Washington, D. C., was on the brief for petitioner in No. 13044, argued for all petitioners and for intervenor National Airlines, Inc., in No. 13044. Mr. Richard A. Fitzgerald, Washington, D. C., was on the brief for intervenor National Airlines, Inc., in No. 13044.

Mr. John F. Floberg, Washington, D. C., for petitioners in No. 13068. Mr. Edward DeGrazia, Washington, D. C., also entered an appearance for petitioners in No. 13068.

Mr. J. D. Feeney, Jr., Chicago, Ill., with whom Messrs. Amos M. Mathews, Chicago, Ill., and Thormund A. Miller, Washington, D. C., were on the brief for petitioners in No. 13121.

Mr. James K. Crimmins, New York City, was on the brief for petitioner in No. 13045. Mr. William Caverly, Washington, D. C., also entered an appearance for petitioner in No. 13045. Mr. W. Glen Harlan, Atlanta, Ga., was on the brief for petitioner in No. 13048. Messrs. Henry J. Friendly, New York City, Robert C. Barnard and Leon Lipson, Washington, D. C., were on the brief for petitioner in No. 13052. Messrs. L. Welch Pogue and James F. Bell, Washington, D. C., were on the brief for petitioner in No. 13054. Mr. Robert L. Stern, Chicago, Ill., was on the brief for petitioner in No. 13061. Mr. James Francis Reilly, Washington, D. C., entered an appearance for petitioner in No. 13061. Messrs. C. Edward Leasure and Herman F. Scheurer, Jr., Washington, D. C., were on the brief for petitioners in Nos. 13063 and 13064. Messrs. L. Welch Pogue and James W. Callison, Washington, D. C., were on the brief for petitioner in No. 13116. Messrs. Robert B. Hankins and Macon M. Arthur, Washington,

D. C., were on the brief for petitioner in No. 13117. Messrs. Hubert A. Schneider and B. Howell Hill, Jr., Washington, D. C., were on the brief for petitioner in No. 13118. Mr. Gerald P. O'Grady, Washington, D. C., was on the brief for petitioner in No. 13120.

Mr. O. D. Ozment, Chief, Litigation and Research Division, Civil Aeronautics Board, with whom Mr. Franklin M. Stone, General Counsel, Civil Aeronautics Board, Mr. John H. Wanner, Associate General Counsel, Civil Aeronautics Board, Messrs. Robert L. Park, Gerald F. Krassa and Henry M. Switkay, Attorneys, Civil Aeronautics Board, and Mr. Daniel M. Friedman, Attorney, Department of Justice, were on the brief, for respondent.

Mr. Albert F. Beitel, Washington, D. C., with whom Mr. John H. Pratt, Washington, D. C., was on the brief for intervenor Aircoach Transport Association, in No. 13044. Messrs. Albert F. Beitel and John H. Pratt, Washington, D. C., entered appearances for intervenor Quaker City Airways, Inc., in No. 13044.

Mr. Coates Lear, Washington, D. C., with whom Mr. Theodore I. Seamon, Washington, D. C., was on the brief for intervenor Independent Military Air Transport Association, in No. 13044. Messrs. Coates Lear and Theodore I. Seamon, Washington, D. C., entered appearances for intervenor Capitol Airways, Inc., in No. 13044.

Before PRETTYMAN, WILBUR K. MILLER, and FAHY, Circuit Judges.

PRETTYMAN, Circuit Judge.

These are petitions to review an order of the Civil Aeronautics Board.[1] This order is the latest in a long series dealing with the problem of the non-scheduled or irregular air carriers. Petitioners are the certificated air carriers and certain railroads. The intervenors in behalf of the respondent are associations of irregular carriers. The respondent, of course, is the Civil Aeronautics Board. It is unnecessary to recite here the background of the present controversy. It appears in its various stages in a long line of cases before this court and before the Board.[2]

The basic requirement heretofore imposed upon the irregular carriers by the Board has been that they operate without any reasonable semblance of regularity as to schedule or route. The basic change wrought by the present order is to remove this requirement of irregularity and to substitute in its place a maximum limitation upon the number of round trips permitted per month between any two points. The Board accomplishes this objective by granting these carriers an exemption under Section 416(b) of the Act.[3] The petitioners contest the validity of the order, so far as the present argument is concerned,[4] upon three basic grounds: (1) that the Act grants the Board no power to issue such an order; (2) that the order is not supported by the findings required by the statute; and

1. Order E-9744. Technically, a subsequent order, E-9884, denying reconsideration of the first order, is also involved.

2. See, e. g., Air Transport Associates v. Civil Aeronautics Board, 91 U.S.App.D.C. 147, 199 F.2d 181 (1952), certiorari denied 344 U.S. 922, 73 S.Ct. 386, 97 L.Ed. 710 (1953); American Air Transport v. Civil Aeronautics Board, 92 U.S.App.D.C. 117, 206 F.2d 423 (1953); Eastern Airlines v. Civil Aeronautics Board, 87 U.S. App.D.C. 331, 185 F.2d 426 (1950), vacated 341 U.S. 901, 71 S.Ct. 613, 95 L. Ed. 1341 (1951); New England Air Express v. Civil Aeronautics Board, 90 U.S. App.D.C. 215, 194 F.2d 894 (1952); Large Irregular Carriers, Exemptions, 11 C.A.B. 609 (1950).

3. 52 Stat. 1004 (1938), as amended, 49 U.S.C.A. § 496(b).

4. The petitions for review presented, generally speaking, issues of law and also issues requiring examination of the evidentiary record. This record totaled fifty thousand pages. By a prehearing order under Rule 38(k) of the Rules of this Court, the court ordered that the issues of law be briefed, argued and decided and that pending such disposition the evidentiary issues be reserved.

(3) that the order is beyond the scope of the proceeding.

In 1951 the Board instituted a proceeding to determine its future policy with regard to Large Irregular Air Carriers.[5] Some sixty-six applicants were involved. Two examiners began hearings, in which not only the general problem was involved but the individual qualifications of the several applicants were treated as issues. Testimony as to about half of the applicants had been presented when the Board deferred further hearing on such qualifications and directed that the proceeding go forward upon the general questions. The examiners presented an initial decision. Exceptions to it were filed, and oral argument was held before the Board. A majority rendered a long opinion and an order. Two members dissented. In the order the Board recited that the enforcement of the certification provisions of the Act, Sections 401(a),[6] 404(a)[7] and 405(e),[8] would be an undue burden on the carriers by reason of the limited extent of, and the unusual circumstances affecting, the operations of such carriers. It ordered that forty-nine of the applicants (naming them) be temporarily exempted from the certification requirements, subject to certain terms, and that each be issued an "Interim Operating Authorization" to terminate sixty days after the Board should dispose of the several individual applications for exemption authority. The terms attached to the order were long and in some detail. The principal one was that the carrier not engage in more than ten flights in the same direction between any single pair of points in any calendar month. In respect to this condition the Board said in its order:

"Whenever, in the judgment of the Board, there is reason to believe that the foregoing ten flight limitation is insufficient to confine the operations of supplemental air carriers as a class to the rendition of the supplemental services for which they are authorized, and that the operations of such carriers pose a substantial threat to the stability and soundness of the certificated air carrier system, the Board may at any time reopen the proceeding and, after notice and opportunity for argument and with or without additional evidentiary hearing, make such downward adjustments in the maximum flight limitation as the Board may deem necessary or desirable. The interim operating authorizations granted by this order are herein expressly conditioned upon and subject to the reserved right of the Board to make further limitations, restrictions or modifications of the ten flight limitation, including a reduction in the number of such flights, to insure that the services remain supplemental."

The opinion of the Board makes clear that the ten flights per month may be conducted upon the basis of a regular schedule. The opinion also makes clear that the Board contemplated that these air carriers could offer unlimited charter operations on a plane-load basis in domestic carriage.

The reasoning of the Board may be summarized. It found that the services performed by the irregular carriers, including charter operations, individually ticketed coach flights, specialized services, and military air-lift, have proven of importance to both the irregular carriers and the public, meeting real needs. It concluded that its policy should be directed toward their survival and healthy growth. It determined that the services rendered by the irregular

---

5. The proceeding was known as The Large Irregular Air Carrier Investigation, Docket No. 5132.

6. 52 Stat. 987 (1938), as amended, 49 U.S. C.A. § 481(a).

7. 52 Stat. 993 (1938), as amended, 49 U.S. C.A. § 484(a).

8. 52 Stat. 995 (1938), as amended, 49 U.S. C.A. § 485(e).

carriers could not be rendered satisfactorily by the presently certificated carriers, which have fixed commitments to route and schedule operation. It found that the elimination of the restriction against regularity would help the public and strengthen the supplemental carriers, and that it would aid in the administration and enforcement of regulations. The Board emphasized that it selected the number ten as the number of permissible trips by taking into account on a average basis the number of permissible trips which might be operated by these carriers under heretofore existing regulations.

The Board turned its particular attention to the suggestion that the new scope of supplemental operations would open the door to unlimited competition which would affect adversely the certificated carriers. It held that the hard facts of economic realism would operate against such a situation, reciting in detail the considerations which led to this conclusion. It said it would not permit the supplemental carriers to combine and integrate their operations. It said it would "underscore for all concerned" that the supplemental carriers are to be restricted to needs they are designed to meet and that if they posed a threat to the certificated system "they must face up to a prompt and effective diminution in the maximum permissible flight frequencies."

The Board made a comparatively brief recital in respect to the undue burden upon the applicants and the unusual circumstances affecting their operations, a matter which we shall discuss in detail hereinafter. The Board reserved decision as to the nature and form of the authority to be granted for the supplemental air transportation it contemplated until the completion of the hearings upon the qualifications of the individual applicants, in the meantime issuing temporary authorization.

Petitioners vigorously attack the order upon the ground that it is not authorized by the statute. Section 416 (b) (1) reads as follows:

"The Board, from time to time and to the extent necessary, may (except as provided in paragraph (2) of this subsection) exempt from the requirements of this title or any provision thereof, or any rule, regulation, term, condition, or limitation prescribed thereunder, any air carrier or class of air carriers, if it finds that the enforcement of this title or such provision, or such rule, regulation, term, condition, or limitation is or would be an undue burden on such air carrier or class of air carriers by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest."

It is clear that the foregoing provision has two basic parts. In the first place, in broad language, it empowers the Board to exempt any class of carriers from "any provision" of the statute or "any rule, regulation, term, condition, or limitation prescribed thereunder." This is sweeping language. The second basic provision in the paragraph is that in order to exert this broad power of exemption the Board must find that enforcement of the statutory provision is or would be "an undue burden" on the class of carriers by reason of the limited extent of, or unusual circumstances affecting, the operation of such carriers. The Board must further find that enforcement of the provision is not in the public interest.

■ This first point of petitioners is that the Board has no authority to issue this order as an exemption order with or without findings such as the ones described in the last clause of the quoted section. They say the order, in and of itself, is outside the scope of the quoted exemption section. The order, they say, represents something the Board cannot do by exemption. Although, as will de-

velop, we think another contention dispositive of this proceeding, a ruling upon that other contention alone would leave the controversy in a wholly unsettled state. The parties have briefed and argued the point now before us, and we shall dispose of it. To treat it we must assume *arguendo* that valid findings as to undue burden and public interest are made.

The petitioners urge that the basic concept of the statute enacted by the Congress for the regulation of the air industry is of a certificated system. Section 401(a) specifically requires that no air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board. Various subsections, notably, *inter alia*, (d), (f) and (k) of Section 401, make provisions respecting certificates and certificated carriers. Petitioners say Congress did not intend that the Board might, by the use of the exemption provision of Section 416(b), destroy the elaborate basic requirements of the Act for a certificated system of airplane carriage. The petitioners are quite correct in that contention. Despite the broad language of Section 416(b) we think it is perfectly clear that the Congress did not set up so elaborate a series of provisions in respect to the certification of carriers, and the public interest, convenience and necessity therein involved, and at the same time grant its administrative agency power to destroy those elaborate provisions. We think there is and must be a boundary to the authority of the Board under its exemption power to impinge upon the certificated service.

But the Board does not disagree with the foregoing. Its position is that a sound national transportation system requires, from the standpoints both of the normal traveling public and of the national defense, a service supplemental to that which is and can be rendered by carriers certificated to routes, schedules and services. It declares that the proposed supplemental carriage must not in the aggregate jeopardize the certificated carrier system. It says that the main and basic transportation system must be a certificated system but that in addition there must be a supplemental service. It not only thus declares its position but, as we have seen, it inserted both in its opinion and in its order a specific provision that, if experience should show that the supplemental operation poses a substantial threat to the certificated system, adjustments will be made to prevent that result. The position of the Board is a rational one. There is undoubtedly a demand for charter service and for extra ticketed service in times of peak demand. If there is to be supplemental service rendered, it seems rational that supplemental carriers, devoted entirely to that task, should be authorized to operate. We accept the declarations of the Board in these respects literally and at full face value. In agreeing with its position we do so upon an acceptance of its concern for the certificated carriers and its purpose to protect them. We believe this is required by the general scheme of the statute.

The real controversy, then, upon the present point is not whether the Board may or may not unduly impinge upon the certificated system by use of the exemption power but whether it has in fact done so. Petitioners urge that ten flights per month between any pair of points upon a regularly scheduled basis are an obvious impingement upon the certificated carrier serving those points. The Board did three things in this respect. It found, upon the basis of the evidence, that such impingement would not be likely to occur. It next announced that it would not permit combinations or collusions between the supplemental carriers which might in total adversely affect the certificated carriers. And, thirdly, as we have already said, it announced that if the results proved different from its anticipations it would

revise the order to eliminate the adverse effects.

We think we could not superimpose our judgment upon that of the Board upon such an issue, even if we had a judgment different from that of the Board. Experience alone will demonstrate the true answer. The Board's expert opinion is that the system it has devised, with its terms and limitations, will not seriously conflict with the interests of the certificated carriers. And it goes further and says it will insure that such conflict does not ensue.

In sum it seems to us that the judgment of the Board, that an air service supplemental to the certificated services is in the public interest, is a rational judgment and one which we must accept; that the finding of the Board that its proposed supplemental service will not result in adverse economic effects upon the certificated system is a conclusion which the Board is entitled to draw if the record supports it with evidence; and that the assurance of the Board that it will not hereafter permit adverse economic effects to jeopardize the certificated system or to pose a substantial threat to it, should be accepted and respected by this court. Having reached that point we then conclude that if the Board makes the required findings as to undue burden, its present plan for a supplemental air carriage, effecting no excessive impact upon the certificated system, would be within the statutory exemption power, i. e., Section 416(b).

■ The second main point urged by petitioners is that the Board failed to make the findings required by the statute to support the exemption under Section 416(b). That section, as we have already noted, requires that the Board find "that the enforcement of this title or such provision, or such rule, regulation, term, condition, or limitation is or would be an undue burden on such air carrier or class of air carriers by reasons of the limited extent of, or unusual circumstances affecting, the operations of such air carrier or class of air carriers and is not in the public interest."

The exemption here involved is from the enforcement of the provision of the statute requiring certification. The question therefore is whether the requirement of certification would be an undue burden on this class of air carriers by reason of either the limited extent of air operations or unusual circumstances affecting their operations; and whether the requirement that this class of carriers be certified is not in the public interest. We find in the opinion of the Board a statement that "In these circumstances, very little purpose would be served by withholding the enlarged operating authority for what may be a lengthy period, and to do so would constitute an undue burden upon the applicants." But that statement does not support a conclusion that an exemption rather than a certification should be granted. It supports a conclusion only that some action should be taken promptly. We also find in the order a conclusion stated in the language of the statute, but the order contains no findings to support that conclusion. We have examined the opinion and the order with care, but we cannot ascertain from them what the Board deems to be the limited extent of the operations of the supplemental carriers which would make a certification an undue burden on the carriers, nor can we determine what unusual circumstances affecting the operations of the supplemental carriers would make certification an undue burden on these carriers. Neither can we ascertain why the Board is of opinion that the certification of these supplemental carriers is not in the public interest.

We think the Board must make findings in the foregoing respects in order that the court, in the exercise of its review function, may determine whether the grant of the exemption is within the

statutory authority of Section 416(b). It might be that the operating authority granted these carriers should be exempted from the requirement of Section 401 (f) that the certificate specify the terminal points between which the carrier is authorized to engage in air transportation, or from the required specification of the service to be rendered. We do not know whether that is what the Board had in mind. But the question before us is not whether the supplemental carriers should be exempted from one or more of the subsidiary requirements of certification but whether they should be exempted from certification altogether. We repeat we cannot ascertain from the opinion or order what undue burden the Board thinks certification would be or why it thinks certification of this supplemental service would not be in the public interest. We are of opinion, therefore, that the case must be remanded in order that the Board may make findings to support the conclusions which the statute makes necessary to the exercise of the exemption power.

We are conscious of the fact that the operating authority issued under the order before us is an interim authority, to be effective only until the Board has concluded its consideration of the qualifications of the various applicants. If the Board had rested a finding of undue burden upon the fact that the interim for which this operating authority is issued is short, whereas the remainder of a certification proceeding would be long, we would be close to the ruling of this court in the air mail case.[9] But we do not understand the Board to rest upon the temporary feature of the order. The purport of the discussion in the opinion of the Board is that the exemption power may be exercised to accomplish the permanent ends it has in mind for these supplemental carriers and does not depend upon or revolve about the temporary character of the exemption presently authorized.

The Board says no detailed findings are required, referring to the fact that this was a rule-making proceeding and relying upon our opinion in Eastern Airlines v. Civil Aeronautics Board.[10] But Section 416(b) itself requires that the Board shall find these conditions to exist, and it is clear that in order for the court to determine whether the Board acted within its statutory authority it must know what the Board finds. The Eastern Airlines case held only that Section 416(b) (1) does not require notice and full hearing and that the proceedings which occurred in that case were sufficient to comply with the procedural requirements of the statute.

In its brief the Board points to various subsidiary findings made by the examiners and adopted by the Board which are factual in respect to the supplemental carriers, such as comparisons between the new limitation and the old limitations in the irregular air carrier regulations, the overall financial resources and revenues of these carriers, the history of these carriers, the steady worsening in their position, and similar facts. But there is nothing to indicate upon what facts or findings the Board based its conclusion that a requirement of certification would be an undue burden upon these carriers. The opinion and the order leave us at a complete loss upon that subject.

We fully realize that the irregular carriers have been operating under exemption authority for many years, and it seems possible, if indeed not probable, that the Board has not heretofore stated its conclusions as to undue burden and public interest in any more extensive form than it does now. But until now these carriers have not operated with any semblance of regularity. They were truly irregular carriers, as they were

9. American Airlines, Inc., v. Civil Aeronautics Board, 97 U.S.App.D.C. 324, 231 F.2d 483 (D.C.Cir.1956).

10. 87 U.S.App.D.C. 331, 185 F.2d 426 (1950), vacated 341 U.S. 901, 71 S.Ct. 613, 95 L.Ed. 1341 (1951).

called. Now they are to become supplemental carriers and no longer irregular. They are moved much closer to the certificated services. The burden of certification is no longer obvious. Moreover we are not referred to an adjudication of a challenge to the presence of an undue burden upon the irregular operation. There is now before us for adjudication a challenge to the burden asserted to exist upon supplemental operation. We think that, if the Board can institute a regular supplemental air service without certification and merely by exercising the exemption power, it may not do so without first clearly meeting the statutory prerequisites to the exercise of that power.

The Board demonstrated, as we have indicated in the first part of this opinion, that the supplemental carriers have a place in the national transportation system and that they should be authorized to operate. But the question now under consideration is whether they should be authorized by certificates, premised upon public convenience and necessity and specifying in some fashion the service which such carriers will be obligated to perform, or whether their operation may be authorized by a simple exemption from all the certification requirements of the statute. To validate an order of exemption the Board must comply with the statute; i. e., it must find what the statute requires it to find, not in conclusory fashion in the statutory language but in such fashion that a reviewing court can test the validity of the finding.

■ The petitioners' third main point is that the order finally issued was not within the scope of the proceeding instituted by the Board's initial orders. We agree with the Board upon this point, basing that conclusion upon the view of the order here under review which we have heretofore described in this opinion.

The cases will be remanded for further proceedings.