**PAN AMERICAN WORLD AIRWAYS,**
**Inc., Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent,**

Seaboard and Western Airlines, Inc., Intervenor.

**TRANS WORLD AIRLINES, Inc.,**
**Petitioner,**

v.

**CIVIL AERONAUTICS BOARD,**
**Respondent,**

Seaboard and Western Airlines, Inc., Intervenor.

**Nos. 14497, 14506.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 19, 1958.

Order Entered Nov. 14, 1958.

Opinion Filed Nov. 18, 1958.

Mr. Elihu Schott, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of court, with whom Messrs. Henry J. Friendly, New York City, and Robert C. Barnard, Washington, D. C., were on the brief, for petitioner in No. 14497.

Mr. Henry P. Bevans, of the bar of the Court of Appeals of New York, New York City, pro hac vice, by special leave of Court, with whom Messrs. George A. Spater, New York City, William Caverly, Washington, D. C., and Charles Pickett, New York City, were on the brief, for petitioner in No. 14506.

Mr. O. D. Ozment, Asst. Gen. Counsel, Litigation and Research, Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, and Henry Geller, Atty., Dept. of Justice, were on the brief, for respondent.

Mr. Morris Chertkov, Asst. Chief, Litigation and Research, Civil Aeronautics Board, and Mr. Daniel M. Friedman, Atty., Dept. of Justice, also entered appearances for respondent.

Mr. Hardy K. Maclay, Washington, D. C., with whom Mr. Walter D. Hansen, Washington, D. C., was on the brief, for intervenor.

Before PRETTYMAN, Chief Judge, and WILBUR K. MILLER and BURGER, Circuit Judges.

BURGER, Circuit Judge.

On May 16, 1958, the Civil Aeronautics Board granted Seaboard and Western Airlines, Inc.[1] (intervenor) an exemption under § 416(b) of the Civil

---

1. Hereinafter called Seaboard.

Aeronautics Act, 52 Stat. 1004 (1938), 49 U.S.C.A. § 496(b). This grant permits Seaboard to carry United States mail across the Atlantic while the Board considers and determines Seaboard's application for certificate of authority to carry such mail. Pan American World Airways, Inc.[2] and Trans World Airlines, Inc.,[3] the only United States airlines presently certified for transatlantic mail carriage, separately petition this court for review of the exemption grant. Civil Aeronautics Act, § 1006, 52 Stat. 1024 (1938), 49 U.S.C.A. § 646. The cases were consolidated and came on for hearing.

Both petitioners contend that this exemption grant contravenes the certification requirements of § 401 of the Act, 52 Stat. 987 (1938), 49 U.S.C.A. § 481, because it is not supported by requisite findings. TWA additionally contends that the exemption was invalid because it lacked the President's signature. Civil Aeronautics Act, § 801, 52 Stat. 1014 (1938), 49 U.S.C.A. § 601.

### I.—Presidential Approval.

■ We are obliged first to consider TWA's contention that the exemption authorization, which is an exemption *from* the requirement for a certificate, is invalid because it did not have presidential approval under § 801 of the Act. The Board and intervenor urge such approval is not required. No court has passed directly on this question.

Section 801 of the Act deals in terms of "issuance, denial, transfer, amendment, cancellation, suspension, or revocation of, and the terms, conditions, and limitations contained in, any certificate authorizing an air carrier to engage in overseas or foreign air transportation

* * *." and these require presidential approval. The Waterman case[4] makes clear that Board action affected by this provision (§ 801) is not subject to judicial review. Hence, if § 801 applies, these petitions must be dismissed for lack of jurisdiction.

We are not persuaded, however, that an *exemption* which for a limited period authorizes a carrier to transport overseas mail between points already receiving certified cargo service from the same carrier is subject to the restrictions of § 801. Section 801 contains no reference to exemptions although it recites explicitly a whole series of Board actions relative to certificates affected by the statute. True, the exemption has operative effects not unlike an amendment of a certificate, but the extraordinary power vested in the Executive by this statute should not be expanded beyond the needs of the foreign relations considerations which have been relied on to justify the grant. Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., note 4 supra, 333 U.S. at page 111, 68 S.Ct. at page 436.

These factors—the uniqueness of the statutory provision, its drastic impact, the precise definition of the statute, and the Board's interpretations fortify the conclusion that Congress did not intend to include exemptions in § 801. The enduring and continuing character of the operations under a certificate as contrasted with the temporary and limited character of the exemption supply the most important basis for distinction.

### II.—Validity of the Exemption.

Section 416(b) of the Act[5] permits the Board to exempt an air carrier from the certificate requirements of § 401 if,

---

2. Hereinafter called Pan American.

3. Hereinafter called TWA.

4. Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp., 1948, 333 U.S. 103, 68 S.Ct. 431, 92 L.Ed. 568.

5. "The Board * * * may * * * exempt from the requirements of this subchapter or any provision thereof

* * * any air carrier * * * if it finds that the enforcement of this subchapter or such provision * * * is or would be an undue burden on such air carrier * * * by reason of the limited extent of, or unusual circumstances affecting, the operations of such air carrier * * * and is not in the public interest." 52 Stat. 1004 (1938), 49 U.S. C.A. § 496(b) (1).

but only if it first finds that enforcement of those requirements would have certain specified results because of the existence of certain specified conditions. The Board must find that the "operations" of the air carrier seeking the exemption are either (1) of "limited extent" or (2) affected by "unusual circumstances." Aside from finding that one of these conditions is present, the Board must also find that that condition *causes* enforcement of the certificate requirements to work "an undue burden" on the carrier. Finally, the Board must find that enforcement of the requirements "is not in the public interest." In the absence of any one of these findings the Board is not authorized to suspend the normal statutory requirements of notice, hearing and requisite findings for issuance of a certificate of public convenience and necessity.

■ Nor may these findings be merely a recital of § 416(b). The Board "must find what the statute requires it to find, not in conclusory fashion in the statutory language but in such fashion that a reviewing court can test the validity of the finding." American Airlines, Inc. v. Civil Aeronautics Board, 1956, 98 U.S. App.D.C. 348, 356, 235 F.2d 845, 853.

■ The Board's findings in this case are short and somewhat cursory, consisting of but three paragraphs. It found that "Seaboard's financial situation is acute," and that "Seaboard's existence is in jeopardy." With no further preliminaries it found that

"To deprive the carrier of the opportunity to earn these revenues [from mail carriage] pending decision on its certificate application would impose an undue burden on it and would not be in the public interest."

It found that the diversion of mail revenues from Pan American and TWA would be slight but that "the benefit to Seaboard will be relatively substantial." From these premises the Board concluded "that the authority conferred by exemption is limited in extent and in the public interest."[6] Finally the Board's order recited the language of § 416(b) in concluding that the exemption should be granted.

Without considering the problem of whether these findings are supported by the record, we hold them inadequate to meet the statutory requirements. The "undue burden" the Board has found is deprivation of revenues during the course of certification proceedings. This "burden" is found to be "undue" because of the financial straits in which Seaboard finds itself. Obviously, any carrier not granted an exemption will be "deprived" of an opportunity to earn revenues from a particular carriage until it is awarded a certificate therefor. The Board has found only one circumstance here that is not present in every certification proceeding: Seaboard's financial distress. This is insufficient. If Congress had wanted to exclude economically marginal carriers from certification requirements, it would have done so in more explicit terms than those of § 416(b).[7] Of course, an unusual circumstance which causes final distress may be such a circumstance as to warrant relief under this exemption provi-

---

6. The Board seems to have misunderstood the "limited extent" requirement. The statute does not refer to the limited extent of the exemption itself; instead it refers to a pre-existing condition of the carrier's operations that qualifies it for an exemption.

7. It is pertinent that, when Seaboard was initially given a transatlantic cargo certificate, the Board said:
"Since the service will not be subsidized, it becomes a matter for the new carrier and its shareholders to determine whether as a matter of business judgment it desires to venture its capital in this enterprise * * * [*sic*] All of the applicants are fully aware of the attendant risks, and all are actively seeking the opportunity to prove the economic feasibility of this venture." Transatlantic Cargo Case, Order No. E–9311, CCH Av.L.Rep. (CAB Cas.1954–57) ¶21,845.02 at 14,-310 (1955).

sion. But financial distress in and of itself, unrelated to circumstances which would render the carrier eligible, is not enough.

In the Surface Mail Experiment Case[8] we upheld an exemption grant, but even there the decision was close under circumstances far more compelling than those here. That exemption permitted certain all-cargo air carriers to participate in a Post Office experiment to determine whether it would be economical and feasible to send some surface mail by air. It was found that certification proceedings, even on an interim basis, could not be completed in time to enable the exempted carriers to participate in the experiment. The court plainly relied heavily on this finding, and Judge Prettyman in concurring said: "In such event denial of an exemption would be a total and final deprivation of participation. That is not the case in the usual application for exemption."[9]

Additionally, in the Surface Mail Experiment Case the Post Office recommended an exemption, reasoning that (a) additional mail volume was anticipated; (b) the cargo carriers would provide protection against service interruptions; and (c) by participation in the experiment the carriers would gain valuable experience. In the present case the Post Office has taken a position that at best might be called neutral. It has said that "there is more capacity than currently needed for the transportation of airmail from the New York Gateway to European points and consequently there is not the peculiar need for exemption which existed because of the airlift experiment * * *." These comments by the Post Office Department tend to weaken the Board's conclusory finding in this case that enforcement of the certificate requirements would not be in the public interest. It is not necessary to hold, however, that this finding has "no rational basis." We hold only that financial distress is not a circumstance which,

standing alone, meets the requirements of § 416(b). Accordingly, we set aside the order granting an exemption to Seaboard.

Order set aside.

8. American Airlines, Inc. v. Civil Aeronautics Board, 1956, 97 U.S.App.D.C. 324, 231 F.2d 483.

9. 97 U.S.App.D.C. at page 329, 231 F.2d at page 488.