**AIR TRANSPORT ASSOCIATES, Inc. v. CIVIL AERONAUTICS BOARD.**

No. 11260.

United States Court of Appeals
District of Columbia Circuit.

Argued May 19, 1952.

Decided July 10, 1952.

Writ of Certiorari Denied Jan. 19, 1953.

See 73 S.Ct. 386.

Warren E. Miller, Washington, D. C., for petitioner.

John H. Wanner, Associate General Counsel, Civil Aeronautics Board, Washington, D. C., with who Emory T. Nunneley, Jr., General Counsel, Civil Aeronautics Board, and O. D. Ozment, Attorney, Civil Aeronautics Board, Washington, D. C., were on the brief, for respondent.

George M. Morris and Albert F. Beitel, Washington, D. C., filed a brief for Aircoach Transport Association as *amicus curiae,* urging reversal.

John C. Williamson, Washington, D. C., filed a brief for Veterans of Foreign Wars of the United States as *amicus curiae,* urging reversal.

Before CLARK, WILBUR·K. MILLER, and PRETTYMAN, Circuit Judges.

PRETTYMAN, Circuit Judge.

This is a petition for review of an order of the Civil Aeronautics Board which revoked petitioner's operating authority as an air carrier and prohibited it from engaging in air transportation, and an order which denied a petition for reconsideration of the first order. We shall call petitioner "Associates". ·

Associates obtained from the Board on August 13, 1948, a Letter of Registration as an Irregular Air Carrier. The letter was issued upon application and exempted Associates from compliance with various economic provisions of the Civil Aeronautics Act, pursuant to authority vested in the Board by Section 416(b)[1] of the Act. The Letter was accompanied by a letter of transmittal and by a copy of the Board's Regulations then in effect.[2] The letter of transmittal informed Associates in part as follows:

"Specifically, operations and public holding out of service between any two points must be confined to flights of such *rarity* and *infrequency* as to preclude any implication of a uniform pattern or normal consistency of operations. It is the Board's desire to promote the development of air transportation by encouraging, within the authority granted by the revised regulation, non-certificated 'fly anywhere at any time', air taxi, charter, and other special types of irregular service, but the establishment of frequent service over regular routes is not deemed to be authorized by the new section 292.1 or by the Letters issued thereunder."

The then-effective Regulations provided in pertinent part:

"§ 292.1 * * *

\* \* \* \* \* \*

"(b) *Classification.* There is hereby established a classification of non-certificated air carriers to be designated as 'Irregular Air Carriers.' An irregular air carrier shall be defined to mean any air carrier * * * (3) which does not hold out to the public, expressly or by a course of conduct, that it operates one or more aircraft between designated points, or within a designated point, regularly or with a reasonable degree of regularity upon which aircraft it accepts for transportation, for compensation or hire, such members of the public as apply therefor or such property as the public offers. No air carrier shall be deemed to be an irregular air carrier unless the air

1. 52 Stat. 1005 (1938), 49 U.S.C.A. § 496(b).

2. 14 Code Fed.Regs. § 292.1 (1947 Supp.).

transportation services offered and performed by it are of such infrequency as to preclude an implication of a uniform pattern or normal consistency of operation between, or within, such designated points. * * *

 * * * * * *

"(d) * * *

"(5) *Revocation of letter of registration.* Letters of registration shall be subject to revocation, after notice and hearing, for knowing and willful violation of any provision of the Civil Aeronautics Act of 1938, as amended, or of any order, rule or regulation issued under any such provision, or of any term, condition or limitation of any authority issued under said act or regulations."

Pursuant to issuance of the Letter of Registration Associates commenced or continued the air transportation of persons and freight, primarily between Seattle and Alaska points, purchased aircraft, and acquired valuable business property.

"On December 10, 1948, the Board issued an 'interpretation' of its Regulation in the form of ten illustrative examples of 'irregular' air transportation." [3] "It said that its purpose was to assist irregular air carriers to conduct their operations in conformity with the act and the Regulation." [4]

In a letter of May 13, 1949, the Chief of the Board's Office of Enforcement informed Associates that examination of its flight reports for the first quarter of 1949 indicated that its operations exceeded the frequency and regularity permissible under its Letter. This communication made reference to published opinions and orders of the Board relating to the scope of allowable operations, and enclosed a copy of the illustrative interpretation of December 10, 1948. It requested that Associates make reply within ten days, demonstrating compliance with the Regulation, and warned that failure to comply would result in the institution of enforcement proceedings.

Effective May 20, 1949, the Board, by a proper rule-making procedure, amended the 1947 Regulation, terminating the blanket exemption as to Large Irregular Carriers and providing that their current Letters of Registration should terminate unless applications under the new Regulation were seasonably filed. The Regulation provided temporary exemption and continued operation under the 1947 Regulation for those Large Irregular Carriers which filed such applications.[5] Associates complied with this requirement, and, so far as the record in this case shows, its application for exemption under the 1949 Regulation has not yet been finally determined by the Board.

On or about July 15, 1949, Associates diverted a number of its Seattle-Alaska services from Boeing Field, Seattle, to Paine Field, Everett, Washington. Boeing Field is in south Seattle. Paine Field, at Everett, is 26 miles north of Boeing and 14 miles from the northern city limits of Seattle. Associates said that this represented an attempt to conform to the Regulation.

In the meantime and thereafter, a long correspondence ensued, which culminated on December 19, 1949, when the Enforcement Office of the Board filed a Motion for Institution of Enforcement Proceedings. In the motion it was alleged, in detail, that Associates had both held out and operated frequent and regular service between Anchorage and Seattle. A calendar analysis of flight reports, which included flights to both Paine and Boeing Fields (the former being circled and the latter boxed), accompanied the motion. The motion charged that the operations in violation of the Regulation were "knowing and wilful". The Board issued an order to show cause, and Associates answered. A formal prehearing conference was held, and, in addition, a stipulation was entered into by counsel. An Examiner's Report of Prehearing Conference was made. Hearings were had before the Examiner, and an Examiner's Report,

---

3. 14 Code Fed.Regs. § 292.1 (1949 ed.).

4. See Certificate to the Supreme Court in No. 11115, Civil Aeronautics Board v.

American Air Transport, U.S.App.D.C., June 12, 1952.

5. 14 Code Fed.Regs. § 291.16 (1949 ed.) (1949 Supp.).

containing proposed findings and conclusions, was filed. Petitioner filed objections and exceptions to the Examiner's Report and submitted a brief to the Board. The Board heard oral argument, filed a written opinion, in which it adopted in part and modified in part the findings of the Examiner, and issued its order revoking petitioner's Letter of Registration. Petitioner then filed a petition for reconsideration, which the Board denied, filing a further written opinion.

I

 Associates says that, although the complaint which gave rise to the proceedings, i. e., the Enforcement Attorney's Motion for Institution of Enforcement Proceedings, charged violations between March 1, 1949, and the date of the motion, December 19, 1949, evidence of violations relating to the period after the latter date and up to June 30, 1950 (i. e., those flight reports available at the time of the hearing before the Examiner) was improperly received in evidence, and that the decision of the Board, being based on evidence not properly of record, must be set aside.

The motion contained the statement: "Upon information and belief, it is alleged that the carrier is continuing and will continue to engage in such operations and activities unless and until the relief requested herein is granted."

At the prehearing conference of June 19, 1950, the enforcement attorney submitted a statement of the issues, Number 1 of which was: "Has Respondent violated or is Respondent violating section 401(a) * * * and/or Part 291 * * *?". Associates filed objections to the prehearing report but took no exception to this part of the statement of the issues.

But more pertinent to this point is a stipulation executed on August 24, 1950, by the enforcement attorney and Associates' Washington counsel. This document provided in part: "1. The flight reports filed or to be filed with the Civil Aeronautics Board by Respondent pursuant to the provisions of Part 242 of the Board's Economic Regulations, for the period from March 1, 1949, until the Board renders its final decision in this proceeding, are incorporated herein by reference, and will constitute evidence in this proceeding." At the hearing in Seattle, Associates' Seattle attorney objected to the stipulation in so far as it permitted the introduction of evidence relating to the period after December 19, 1949. Associates claimed surprise and contended that the scope of the hearing could not be enlarged by stipulation. Washington counsel wired the Examiner repudiating the stipulation. Associates objected to all evidence introduced relating to dates after December 19, 1949.

Even if we assume that a party may withdraw from a stipulation entered into inadvertently, nevertheless the Board was correct in holding that the allegation of a continuing offense and the denial thereof put in issue the time period from the filing of the motion until the opening of the hearing. Certainly it is clear from the above recital of facts that Associates is not entitled to claim surprise.

We think this point is not well taken.

II

 Associates says that Part 291 of the Economic Regulations is void as vague, indefinite and uncertain, and that it has no application to carriers operating "transport-type" aircraft.

The thrust of the first point is that the phrase "frequency and regularity" is void for vagueness, and reference is made to United States v. L. Cohen Grocery Co.[6] The point is without merit. In this respect the opinions in Civil Aeronautics Board v. Modern Air Transport,[7] Boyce Motor Lines v. United States,[8] and Brady Transfer & Storage Co. v. United States[9] are pertinent. Associates had ample advice, as the above recital of facts shows, as to the intended scope of the disputed phrase.

6. 1921, 255 U.S. 81, 41 S.Ct. 298, 65 L. Ed. 516.

7. 2d Cir., 1950, 179 F.2d 622.

8. 1952, 342 U.S. 337, 340–342, 72 S.Ct. 329, 96 L.Ed. ——.

9. D.C.S.D.Iowa, 1948, 80 F.Supp. 110, affirmed. 1948, 335 U.S. 875, 69 S.Ct. 239, 93 L.Ed. 418.

The point that the Regulation had no application to "transport-type" aircraft is not available to petitioner, since it acquired its business property with notice of the limitation applicable to the operations it proposed to conduct. The argument that Section 416, empowering the Board to "establish such just and reasonable classifications" of carriers "as the nature of the services performed by such air carriers shall require", compels the Board to establish a classification and promulgate regulations which will provide opportunity for "route operations", ignores the permissive nature of the authority conferred on the Board. The simple answer is that the Board might have chosen to exempt no one under Section 416.

### III

■ Associates contends that the Board improperly included flights originating and terminating at Paine Field, Everett, Washington, as flights from and to Seattle, and that such inclusion was improper under the Regulation.

At the time of issuance of Associates' Letter of Registration, the Regulation provided: " * * * 'point' shall mean any airport or place where aircraft may be landed or taken-off, including the area within a 25-mile radius of such airport or place."[10] That the Board did not include Paine flights appears clearly in its initial opinion, and from the calendar analysis attached thereto, which excludes Paine flights. Associates argues that in the opinion on reconsideration the Board included the Paine flights. But that discussion clearly says that the flights to Boeing alone were of excessive frequency and regularity. The Board does go on to say that in concluding that Associates' Seattle-Anchorage flights were regular the Board was not accepting as valid the contention that the Paine-Anchorage flights could not or should not be counted in determining the regularity of the operations; and it said that service to Paine was service to Seattle, attaching a calendar analysis reflecting Paine as well as Boeing flights. And the Board found that

Associates held out regular service to and from Seattle by means of its operations to and from Paine. Whether operations at Paine are or are not considered for purposes of this case, the record is clear that Associates held out a regular Seattle service by means of Paine flights, a clear violation of the Regulation with reference to holding out. The record shows that, of 320 passengers at Paine over a 4½-month period, 261 were transported from Seattle to Paine, or vice versa, by transportation arranged by Associates, albeit paid for by the passengers.

The decisive consideration on this point is that the Board did not include Paine flights in its finding that petitioner's operations exceeded permissible frequency and regularity.

### IV

■ Associates next argues that, excluding the Paine flights, its Seattle-Anchorage service was not "frequent and regular", in that there were extended breaks in service at intervals, at least as governed by the Regulations in effect at the time of issuance of its Letter. Those Regulations, together with the explanatory material, were summarized by the Second Circuit in Civil Aeronautics Board v. Modern Air Transport.[11]

Detailed findings as to the extent of operations conducted by Associates between Boeing and Anchorage appear in the Board's first opinion and are supported by the calendar analysis. These data support the conclusion that these operations violate the Regulation. It is shown that during the 70-week period from March, 1949, to June, 1950, covered by the hearing, northbound flights were operated on two to five days a week in 60 of the 70 weeks and in all 26 of the weeks from January to June, 1950. Southbound flights were operated on two or more days of the week for 16 consecutive weeks in 1950. The evidence also reflects regularity of operations, in that flights tended to be operated on the same day of the week over many successive weeks. For example, over the 13-week

---

10. 14 Code Fed.Regs. § 292.1(b) (1947 Supp.).

11. Supra, 179 F.2d at page 625.

period ending June 30, 1950, at least one northbound flight was conducted every Tuesday and Friday, except one, and at least one southbound flight was operated every Tuesday but one, and every Thursday but two, all in addition to operations on the other days of the week.

Indeed, Associates' arguments in this respect are directed primarily to the point that the Board in fact amended its Regulation by case-by-case "interpretation", by Interpretation No. 1 of December 10, 1948, and by the adoption of the 1949 Regulation repealing the blanket exemption, after Associates had made its business investments. The contention is without merit, as indicated by a review of the information which Associates had when it applied for and received its Letter, as we have described it hereinabove.

As to the 1949 Regulation, while it did terminate all former blanket exemptions, Associates' operating authority was extended when it filed its application for individual exemption. Moreover, the 1949 Regulation did not establish new criteria for determining whether flights are irregular and infrequent. And, again, the finding of the Board was that Associates' activities were in violation of the standards existing at the time its Letter was issued.

Associates also argues that extended breaks in its service, as shown on the calendar analysis, bring it within the terms of the Regulation. The analysis does, in fact, show extended breaks in service, and Associates' operations in some months reported might well be held to conform to its authority. But our problem is whether the Board's finding of excessive frequency and regularity is based on substantial evidence in the record as a whole, and we think it clear that it is.

## V

■■ With respect to the finding that Associates violated the Regulation by "holding out" that it operated "regularly or with a reasonable degree of regularity", Associates argues that the Board erred in holding it responsible for the activities of Air Transport Associates Sales Company, its sales and traffic solicitation agent subsequent to October 18, 1949. The Board found that it was unnecessary to hold that the Sales Company was the *alter ego* of Associates, because, by accepting business generated by the Sales Company on the basis of representations as to regularity of Associates' operations, Associates adopted and became responsible for such representations. The rule that the principal is responsible for the acts of its duly authorized agent is applicable here. The documentary evidence of record alone would support the disputed finding as to the "holding out" of regular service by Sales on behalf of Associates.

## VI

■ Associates' final contention is that its Letter of Registration was improperly revoked, since its violations were not wilful and it had not had notice from the Board or an opportunity to comply.

Associates argues that Section 401(h) of the Civil Aeronautics Act[12] and Section 9(b) of the Administrative Procedure Act[13] required that it have notice from the Board before its Letter could be revoked. The terms of Section 401(h) relate to certificates of convenience and necessity and so have no application here. Section 9(b) of the Administrative Procedure Act provides an exception to the notice requirement in cases of wilfulness. In this respect the warnings from the Enforcement Office to Associates are relevant and, together with the replies thereto, establish the wilfulness of these violations.[14]

The orders of the Board will be and are

Affirmed.

12. 52 Stat. 989 (1938), 49 U.S.C.A. § 481 (h).
13. 60 Stat. 242 (1946), 5 U.S.C.A. § 1008 (b).
14. Hughes v. Securities and Exchange Commission, 1949, 85 U.S.App.D.C. 56, 62–63, 174 F.2d 969, 975–976. See also New England Air Express v. Civil Aeronautics Board, 1952, 90 U.S.App. D.C. 215, 194 F.2d 894.