**AMERICAN AIR TRANSPORT, Inc. v. CIVIL AERONAUTICS BOARD.**

No. 11575.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 19, 1952.

Decided March 5, 1953.

Petition for Rehearing Denied April 15, 1953.

Mr. Albert F. Beitel, Washington, D. C., with whom Messrs. George M. Morris and John H. Pratt, Washington, D. C., were on the brief, for petitioner.

Mr. John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Board, Washington, D. C., with whom Messrs. Emory T. Nunneley, Jr., Gen. Counsel, Civil Aeronautics Board, and O. D. Ozment, Atty., Civil Aeronautics Board, Washington, D. C., were on the brief, for respondent. Mr. Charles H. Weston, Chief, Appellate Section of the Antitrust Division, Department of Justice, Washington, D. C., entered an appearance for respondent.

Before EDGERTON, PRETTYMAN and BAZELON, Circuit Judges.

BAZELON, Circuit Judge.

Petitioner was authorized to operate as a large irregular air carrier by a Letter of Registration issued under Part 291.17 (formerly 292.1(d)) of the Civil Aeronautics Board's Economic Regulations.[1] It seeks review of two Board orders—one suspending and the other revoking that authorization.[2] Since we affirm, only the order of revocation requires discussion.

The Board acted under Part 291.20 which provides that Letters of Registration "shall be subject to revocation * * * for knowing and willful violation of any provisions of the act or of any order, rule, or regulation * * *."[3] It found that petitioner "knowingly, willfully, and flagrantly violated sections 401(a) and 1005(e)" of the Civil Aeronautics Act[4] by conducting regular air operations in violation of

(1) Part 291 of the Regulations which authorizes irregular carriers to provide only infrequent services in a non-uniform pattern of operations;[5] and

(2) a Board order previously entered against it to comply with Part 291 and to cease and desist from regular services.

Part 291 exempts large irregular air carriers from compliance with various economic provisions applicable to certificated carriers authorized under § 401 to engage in regularly scheduled operations. "Irregular" air carriers offering regular services are therefore held to be in violation of the certification requirement of § 401.[6] And § 1005(e), which the revocation proceedings were designed to implement,[7] makes it the duty of every person subject to the Act "to observe and comply with any order, rule, regulation, or certificate issued by the Board * * * so long as the same shall remain in effect."[8]

Petitioner urges that the revocation order is invalid because (1) Part 291 does not apply to its operations, and (2) the cease and desist order is not res judicata against it. The contrary view we take of the cease and desist order is dispositive of this appeal since that order requires compliance with Part 291.

The cease and desist order, entered more than two years prior to the orders under

1. 14 Code Fed. Regs. § 292 (1949), § 291 (Cum.Supp. 1951).

2. Both orders have been stayed pending review.

3. 14 Code Fed. Regs. § 291.20 (Cum. Supp. 1951); see Air Transport Associates, Inc. v. Civil Aeronautics Board, 1952, 91 U.S.App.D.C. 147, 199 F.2d 181, certiorari denied, 1953, 344 U.S. 922, 73 S.Ct. 386.

4. 52 Stat. 987, 1024 (1938), as amended, 49 U.S.C.A. §§ 481(a), 645(e) (1946).

5. Part 291.1 provides in pertinent part:

"No air carrier shall be deemed to be an irregular air carrier unless the air transportation services offered and performed by it are of such infrequency as to preclude an implication of a uniform pattern or normal consistency of operation * * *." 14 Code Fed. Regs. (Cum. Supp. 1951).

6. Civil Aeronautics Board v. Modern Air Transport, Inc., 2 Cir., 1950, 179 F.2d 622, 625.

7. C.A.B. Opinion and Order No. 6780, p. 15 (September 10, 1952).

8. See note 4, supra.

review, was based upon a finding that petitioner's two round-trip flights per week between New York and San Juan, exceeded "the degree of regularity permitted by Part 292.1" [9] (now Part 291.1). The Board ordered petitioner to cease air transportation unless it complied with Part 291, and specifically proscribed the operation of aircraft "[r]egularly or with a reasonable degree of regularity [i. e.,] * * * by the operation of a single flight per week on the same day of each week between the same two points, or * * * by the recurrence of operations of two round-trip-flights, or flights varying from two to three or more such flights, between any same two points each week in succeeding weeks, without there intervening other weeks or approximately similar periods at irregular but frequent intervals during which no such flights are operated so as thereby to result in appreciable definite breaks in service * * *." [10]

We will not go behind that order on this appeal. Petitioner is bound by its failure to invoke judicial review either within the sixty days provided by the Act or by requesting leave of court thereafter. [11] We recognize that there may be circumstances under which the application of the common law doctrine of res judicata to administrative determinations may be re-

laxed. [12] But here our attention has not been drawn to any such circumstances. Thus we hold that the cease and desist order is *res judicata* and petitioner's operations are accordingly governed by Part 291. [13]

But even if we were to go behind the cease and desist order for the purpose of considering petitioner's objections to Part 291, the result would be the same. Petitioner claims that regulation inapplicable because certain conditions therein were not in existence when it commenced operations early in June 1946. At that time, a 1938 regulation was in effect. It defined an operation as non-scheduled (later designated "irregular"), "if the air carrier does not hold out to the public by advertisement *or otherwise* that it will operate one or more airplanes between any designated points regularly or with a reasonable degree of regularity * * *." [14] Effective June 15, 1946, the Board amended that regulation to read, as Part 291 does now, that an operation is non-scheduled if the air carrier does not "hold out to the public expressly *or by a course of conduct* that it operates * * * regularly or with a reasonable degree of regularity * * *." [15] We find no merit in the contention that the 1946 phrase "by a course of conduct" imposes different limitations on petitioner's

9. C.A.B. Opinion and Order No. E-3906, pp. 30, 36 (February 15, 1950).

10. Id. at 37. The Board entered the order under the authority of § 1002(c) of the Act which provides: "If the Board finds, after notice and hearing, in any investigation instituted upon complaint or upon its own initiative, that any person has failed to comply with any provisions of this chapter or any requirement established pursuant thereto, the Board shall issue an appropriate order to compel such person to comply therewith." 52 Stat. 1018 (1938), as amended, 49 U.S.C.A. § 642(c).

11. 52 Stat. 1024 (1938), as amended, 49 U.S.C.A. § 646(a) (1946) provides in pertinent part: "Any order, affirmative or negative, issued by the Board under this chapter * * * shall be subject to review by the courts of appeals of the United States or the United States Court of Appeals for the District of Columbia upon petition, *filed within sixty days after*

*the entry of such order, by any person disclosing a substantial interest in such order.* After the expiration of said sixty days a petition may be filed only by leave of court upon a showing of reasonable grounds for failure to file the petition theretofore." (Emphasis supplied.)

12. For a discussion of *res judicata* and the administrative process, see Davis, Administrative Law 563–613 (1951).

13. Federal Trade Commission v. Morton Salt Co.. 1948, 334 U.S. 37, 54, 68 S.Ct. 822, 92 L.Ed. 1196; Aiken v. Cogswell, 91 U.S.App.D.C. 339, 201 F.2d 705; United States v. Willard Tablet Co., 7 Cir., 1944, 141 F.2d 141, 143, 152 A.L.R. 1194; Piuma v. United States, 9 Cir., 1942, 126 F.2d 601, 603, certiorari denied, 1942, 317 U.S. 637, 63 S.Ct. 28, 87 L.Ed. 513.

14. C.A.B. Reg. 400–1, as amended, December 7, 1938 (emphasis supplied).

15. See note 1, supra (emphasis supplied).

operations than the 1938 phrase "by advertisement *or otherwise.*" Moreover, the 1938 regulation was to remain in force only "[u]ntil the Authority [the Board] shall adopt further rules, regulations or orders with respect to such matter * * *." [16] And since Part 291 and the intervening regulations embodied therein constitute an adoption by the Board of further regulations with respect to such carriers, petitioner would on that account alone be subject to Part 291.

All that remains then is to determine whether there is substantial evidence in the record as a whole to support the Board's finding that petitioner has willfully violated Part 291 and the cease and desist order. Clearly, there is. Following entry of the cease and desist order, petitioner increased rather than decreased the regularity of its service. To cite merely one example, it expanded operations from an average of 2 flights per week between New York and San Juan, Puerto Rico for some 52 weeks to 4 flights per week between Miami and Newark for 56 consecutive weeks.

[4, 5] Equally without merit are other objections to the revocation order. One objection is that there was a denial of due process in the Board's failure to schedule a hearing on petitioner's long pending application for certification under § 401.[17] That objection does not bear on the violations involved here, and the remedy, if any, is not available on this appeal. Petitioner's further objection that § 1007(a) of the Act "places the enforcement of orders and regulations squarely in the district court" is not in point. Here the Board sought to revoke an operating authority for violations of its order and regulations, not "to enforce obedience thereto * * *." [18]

The orders under review are

Affirmed.

PRETTYMAN, Circuit Judge (concurring in the result).

I concur in the result in this case, but I rest my concurrence upon the second point discussed by the court, that the company violated a regulation properly applied to it. The crucial phrase in the regulation adopted in 1938, eight years before this company came into existence, referred to a holding out to the public "by advertisement or otherwise". On May 17, 1946, the Board in two opinions [1] interpreted the expression "by advertisement or otherwise" to include a regular course of conduct. Effective June 15, 1946, the Board amended the regulation (Regs. 367) itself, so that the phrase thereafter read "expressly or by a course of conduct". This petitioner was incorporated in June, 1946. It says that it acquired its aircraft the previous month, in May, 1946. It applied for its letter of registration in 1947, and the letter was issued to it on July 8, 1947. I think (1) that the phrase "by advertisement or otherwise" includes "a course of conduct" and (2) that this petitioner was at all times well aware of that meaning of the regulation, being charged with notice of the Board's decisions of May, 1946, which was prior to its incorporation, and of the amendment of the regulation which became effective in June, 1946, which was practically coincident with its incorporation. The evidence was ample to support the conclusion of the Board that petitioner, after it began operations, held itself out to the public by its course of conduct as conducting a service with a reasonable degree of regularity. On these bases I concur in affirmance of the disputed orders of the Board.

I think we should not attempt to decide in this case the *res judicata* point, since it is not necessary that we do so. That point presents a puzzling problem. The cease and desist order was not enforceable ex-

---

16. See note 14, supra.

17. See note 4, supra. Petitioner's application was filed on April 4, 1949, following commencement of cease and desist order proceedings but prior to the entrance of the order in February 1950.

18. 52 Stat. 1025 (1938), as amended, 49 U.S.C.A. § 647(a) (1946).

1. Investigation of Nonscheduled Air Services, 6 C.A.B. 1049, 1055; Page Airways, Inc., Investigation, 6 C.A.B. 1061, 1067.

cept by court order.[2] It was reviewable.[3] And the statute says that orders of the Board must be obeyed "so long as the same shall remain in effect."[4] No enforcement proceeding was brought by the Board, and no review proceeding was brought by the company. The Board then revoked the company's license, partly upon the ground that it (the company) failed to comply with the cease and desist order. The question is whether the validity of the cease and desist order is open to challenge in the revocation proceeding. Whether failure to obey a cease and desist order (possibly a violation of the statute[5]) could be a valid ground for revocation is a different question, it seems to me. The company might be held to assume the risks of violating what might be held to be a valid order without being held foreclosed from challenging that order.

When the pertinent parts of the several sections of the statute are juxtaposed, the problem becomes clear. "It shall be the duty of every person subject to this chapter * * * to observe and comply with any order * * * issued by the Board * * so long as the same shall remain in effect."[6] "Any order * * * issued by the Board * * * shall be subject to review by the courts of appeals of the United States * * * upon petition, filed within sixty days after the entry of such order, by any person disclosing a substantial interest in such order."[7] "If any person violates any provision of this chapter, or any * * * order thereunder, * * * the Board * * * may apply to the district court of the United States * * * for the enforcement of said * * * order * * *; and such court shall have jurisdiction to enforce obedience thereto * * *."[8]

If a cease and desist order, not reviewed by a court of appeals, is *res judicata* of all matters involved in it, and if the Board

can base revocation of a license upon disobedience of that order, the Board has a potent weapon for enforcement; potent enough, one would think, to remove court enforcement proceedings from the realm of usefulness. But Congress must have meant court enforcement proceedings to be used. On the other hand, it would seem odd that a company could ignore an order of the Board in the face of a statutory direction to obey and in the presence of a right to court review if the order was thought invalid. Having thus briefly depicted the problem, I would not attempt to answer it in this case, because here the ultimate result must be the same in any event.

The Federal Trade Commission cases upon which the court relies do not seem to me to be helpful here. In part they deal with different statutory situations, and in part they deal with the conclusiveness of findings of fact by the Commission.

2. 52 Stat. 1025 (1938), as amended, 49 U. S.C.A. § 647.

3. 52 Stat. 1024 (1938), as amended, 49 U. S.C.A. § 646.

4. 52 Stat. 1023 (1938), as amended, 49 U. S.C.A. § 645(e).

5. Ibid.

6. Ibid.

7. 52 Stat. 1024 (1938), as amended, 49 U. S.C.A. § 646(a).

8. 52 Stat. 1025 (1938), as amended, 49 U. S.C.A. § 647(a).