**NORTH AMERICAN AIRLINES, Inc., et al., Petitioners,**

v.

**CIVIL AERONAUTICS BOARD, Respondent.**

No. 12858.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 13, 1956.

Decided Dec. 20, 1956.

Petition for Rehearing Denied
Jan. 18, 1957.

Mr. Hardy K. Maclay, Washington, D. C., with whom Mr. Walter D. Hansen, Washington, D. C., was on the brief, for petitioners.

Mr. O. D. Ozment, Chief, Litigation and Research Division, Civil Aeronautics Bd., with whom Messrs. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Bd., John H. Wanner, Associate Gen. Counsel, Civil Aeronautics Bd., Robert L. Park, Gerald F. Krassa and Henry M. Switkay, Attorneys, Civil Aeronautics Bd., were on the brief, for respondent. Mr. Charles H. Weston, Atty., Dept. of Justice, also entered an appearance for respondent.

Before EDGERTON, Chief Judge, and WASHINGTON and DANAHER, Circuit Judges.

DANAHER, Circuit Judge.

The Board ordered revocation of the Letters of Registration of four large irregular carrier petitioners; that the carriers cease and desist from engaging in air transportation and from violation of the provisions of Section 408 of the Civil Aeronautics Act of 1938 [1]; and further, that the remaining petitioners cease and desist from violation of the provisions of Sections 401(a) and 408 of the Act. [2] The Board's Compliance Division had charged, in essence, that all petitioners had combined through a series of arrangements to constitute a single entity for the performance of air transportation, and that the acts and conduct of the petitioners had been deliberately planned and executed for the purpose of evading and circumventing the applicable provisions of the Act and the Board's regulations. We have been asked to review and set aside the Board's Order, E-9360.

Dissenting Board Member Adams concurred "with the majority findings that the respondents have wilfully violated

1. 52 Stat. 977 (1938), as amended, 49 U.S.C. § 401 et seq. (1952). All references herein, except as otherwise indicated, are to the United States Code, 1952 edition.

2. § 401(a) of the Act, 49 U.S.C. § 481(a); § 408 of the Act, 49 U.S.C. § 488.

Part 291 of our Economic Regulations, particularly regarding our rules against the operation by an irregular carrier of frequently scheduled flights. In view of these violations I agree that some drastic sanction against the four holders of letters of registration—Twentieth Century Air Lines, Inc., Trans National Airlines, Inc., Trans American Airways, Inc., and Hemisphere Air Transport—is in order, but I do not agree that the only proper sanction in this case is revocation of those letters of registration." Making clear that he had long differed from the majority on an issue of Board policy, the dissenting member agreed that the irregular carrier petitioners should be penalized severely but thought that the order should "yet enable them to survive." The majority in its Opinion [3] recited that "The Board is confronted with the question whether it shall call a halt to the operations of the so-called 'North American Combine' [4] for alleged knowing and wilful violations of the Act and the Board's Economic Regulations."

Section 401 of the Act expressly provides that no air carrier shall engage in air transportation without a certificate of public convenience and necessity, but Section 416, 49 U.S.C. § 496, authorizes the Board to grant certain exemptions. Pursuant thereto, and reflecting its published Findings, [5] the Board adopted regulations on May 5, 1947, exempting non-certificated air carriers "so long as they engage only in irregular services as defined in such regulations." The Board, in its Findings, noted that irregular services vary greatly and fill a need which cannot economically be performed by certificated carriers. "Because of the fact that irregular services meet a definite need and must be infrequent and irregular, such services, if properly regulated under the provisions of the Act

other than those relating to certificates of public convenience and necessity, will not under present conditions have adverse competitive effect upon the services performed by the certificated air carriers." [6] The Board found further that its statutory powers to grant exemptions "extend only to air carriers." Based on its Findings and pursuant to Sections 205(a) and 416(b) of the Act, [7] the Board promulgated Section 292.1 of its Economic Regulations. Therein an irregular air carrier was defined to be one which does not "hold out to the public, expressly or by a course of conduct, that it operates one or more aircraft between designated points * * * regularly or with a reasonable degree of regularity upon which aircraft it accepts for transportation, for compensation, or hire, such members of the public as apply therefor. * * * No air carrier shall be deemed to be an Irregular Air Carrier unless the air transportation services offered and performed by it are of such infrequency as to preclude an implication of a uniform pattern of normal consistency of operation between * * * such designated points * * *." The Regulations further provided that a Letter of Registration might issue to a qualified irregular air carrier upon the filing of a proper application, but also that "Letters of Registration shall be subject to revocation, after notice and hearing, for knowing and willful violation of any provision of the Civil Aeronautics Act of 1938, as amended, or of any order, rule or regulation issued under any such provision, or of any term, condition or limitation of any authority issued under said Act or regulations."

The petitioner carriers received Letters of Registration in accordance with the 1947 regulations and subject to their

3. Not yet officially reported, but partially to be found as "Compliance Proceeding." 1A, CCH, Aviation Law Rep. ¶ 21,848 (July 1, 1955).

4. The petitioners were jointly so denominated in the complaint.

5. 12 Fed.Reg. 3076 (1947), and see 14 C.F.R. § 292.1 (1947 Supp.).

6. Findings ¶ 2, 12 Fed.Reg. 3076 (1947).

7. Respectively, 49 U.S.C. § 425 and 49 U.S.C. § 496.

provisions and the conditions therein set forth. [8]

The complaint in the enforcement proceeding before the Board alleged, and the Board adopted the Examiner's finding, that control of the four petitioner carriers had been acquired by petitioners Weiss, Fischgrund, Lewin and Hart in violation of Section 408 of the Act, *infra* note 15, and that these individual petitioners had operated in air transportation without authority from the Board and in violation of Section 401(a) of the Act, *supra* note 2. The Examiner and the Board had found, and in our view the record amply supports the finding, that Twentieth Century (North American), Trans National and Trans American were controlled, if not beneficially owned, by Weiss, Fischgrund, Lewin and Hart. The latter individual petitioners as partners owned the partnerships, petitioners herein known as Twentieth Century Aircraft Co., California Aircraft Co., and Standard Airmotive Co., and the partnerships owned the aircraft.

Petitioner Adelman, doing business as Hemisphere Air Transport, leased aircraft from a partnership owned by other individual petitioners. Pursuant to powers of attorney and various agreements with others of the petitioners, Adelman rented or leased the Hemisphere Air Transport Letter of Registration to the "North American Combine." The Examiner found, and the record supports his finding adopted by the Board, that Adelman relinquished control over the operations of Hemisphere to the "Combine," consisting of the petitioners Weiss, Fischgrund, Lewin and Hart, their partnerships, and the petitioner companies, herein named.

Petitioner North American Aircoach System, Inc., is a corporation all of the stock in which is owned by Weiss, Fischgrund, Lewin and Hart who also, as partners, own petitioner Republic Air Coach System. The corporation, the complaint charged, and its answer admitted, "performs and furnishes for the North American Combine, the promotional, advertising, sales and other traffic generating services directly and through ticket agents employed by the Combine, handles passenger reservations, and plans and schedules flights." The partnership, Republic, the complaint charged and its answer admitted "provides and furnishes, for the North American Combine the accounting, bookkeeping, financial management, and other fiscal services, and sometimes certain ground services and personnel for passenger handling at various airports."

The complaint charged and the answer of all petitioners except Hemisphere admitted that "substantially all" aircraft operated by the member carriers of the "Combine" have the name "The North American" on the fuselage, and the names of individual carriers do not appear. Similarly, all flights departing or arriving at various airports served by "the North American Combine" are announced over public addresses and otherwise as "North American" flights. In like manner, advertising and other public relations for the solicitation of traffic are conducted in and hold out the name of "North American" by various devices.

■ That there came into being an entity reasonably well described in the complaint as the "North American Combine" is, to us, abundantly clear. That this entity held itself out to the public expressly or by a course of conduct as regularly and frequently operating one or more aircraft between designated points, is beyond peradventure. That the "Combine," within the language of the 1947 Regulations, failed to perform air transportation services of such in-

---

8. Petitioners' amended answer set forth the issuance dates thus:

Twentieth Century Air Lines, Inc., July 22, 1947.

Hemisphere Air Transport, September 5, 1947.

Trans National Airlines, Inc., April 30, 1948.

Trans American Airways, Inc., May 27, 1948.

frequency as to preclude an implication of a uniform pattern or normal consistency of operation between designated points, seems overwhelmingly established. We have then the question of whether or not such conduct so far violates the Act and the regulations mentioned above as to afford a basis for the Board's order here under review.

The Board found that the "Combine" violated the statute and the regulations and that the violations were "knowing and wilful." That the acts and conduct and arrangements and the operations pursuant thereto were knowing and willful, we have no doubt whatever, and no more need be said on this aspect of the case. [9]

"No air carrier shall engage in any air transportation unless there is in force a certificate issued by the Board authorizing *such* air carrier to engage in such transportation * * *." [10]  " 'Air carrier' means any citizen of the United States who undertakes, whether *directly or indirectly* or by a *lease* or *any other arrangement,* to engage in air transportation * * *." [11]  " 'Citizen of the United States' means (a) an *individual* who is a citizen of the United States

* * * or (b) a *partnership* of which each member is such an individual, or (c) a corporation or association * * * of which the president and two-thirds or more of the board of directors * * * are such individuals and in which at least 75 per centum of the voting interest is owned or *controlled* by persons who are citizens of the United States * * *." [12]  "For the purposes of this subchapter, whenever reference is made to control, it is immaterial whether such control is *direct or indirect*." [13]  " 'Person' means any individual, firm, copartnership, corporation, company, association, joint-stock association or body politic * * *."[14] Portions of § 408 of the Act, considered pertinent by the Board, are set forth in the margin. [15]

■ Having the foregoing provisions in mind, and particularly the portions where emphasis has been added, we must determine whether the Board's findings are supported by substantial evidence. If so, its findings are conclusive. [16] We first inquire whether or not all of the petitioners were properly found in violation of Section 401(a) of the Act for, if so, quite apart from other grounds, [17] the Board's order of revocation of the

9. As to previous violations by various petitioners, see footnote 18, *infra.*

10. 49 U.S.C. § 481(a). Italics in quoted portions of the Act and the regulations have been supplied by us.

11. 49 U.S.C. § 401(2).

12. 49 U.S.C. § 401(13).

13. 49 U.S.C. § 493.

14. 49 U.S.C. § 401(27).

15. "(a) It shall be unlawful, unless approved by order of the Board as provided in this section—

"(1) For two or more air carriers, or for *any air carrier* and * * * *any person* engaged in any other phase of aeronautics, to consolidate or merge their properties, or *any part thereof,* into one person for the ownership, management, or *operation* of the properties theretofore in separate ownerships;

"(2) For *any air carrier, any person controlling an air carrier* * * * or *any person engaged in any other phase of aeronautics,* to purchase, lease, or

contract to operate the properties, or any substantial part thereof, of any air carrier;

    *    *    *    *    *

"(5) For any air carrier or *person controlling an air carrier* * * * or *any person engaged in any other phase of aeronautics, to acquire control of any air carrier in any manner whatsoever;*

    *    *    *    *    *

"(7) For any person to continue to maintain any relationship established in violation of any of the foregoing subdivisions of this subsection." 49 U.S.C. § 488(a).

16. 49 U.S.C. § 646(e); Kuhn v. Civil Aeronautics Board, 1950, 87 U.S.App. D.C. 130, 134, 183 F.2d 839, 843.

17. The violations found by the Board may be summarized: By all petitioners as engaging in air transportation as a single carrier not holding operating authority; by all petitioners as having consolidated their properties into a single carrier; by the individual petitioners, through

carriers' Letters of Registration and its "cease and desist" orders against all petitioners on that ground must be sustained. We may then consider the basis for the "cease and desist" orders directed to the petitioners other than the carriers on account of the claimed violations of Section 408 of the Act.

■ It may be perceived that all of the petitioners planned a common course of action; that they arrived at an understanding or agreement to form a combination which became a single integrated air carrier; and that the carrier engaged in air transportation without being possessed of a certificate, issued by the Board, authorizing the "Combine," so organized, to engage as an air carrier in air transportation. Within the meaning of Section 408 of the Act, the individual petitioners were clearly persons engaged in various phases of aeronautics: through their ownership of the petitioner partnerships which owned the aircraft; through their control, either direct or indirect, of the petitioner carriers to which had been issued the Letters of Registration; either by themselves, or by means of entities controlled by them, through leasing or otherwise contracting for the operation of aircraft under the Letter of Registration of Adelman's Hemisphere Air Transport, thus pooling his Letter of Registration with those of the other petitioner carriers and operating frequently and regularly as part of the air transport services, aircraft which Adelman had leased from the individual petitioners or their partnership; through their stockholder interest in and control of petitioner North American Aircoach System, Inc., in which they also served as officers, Lewin as president,

Fischgrund as vice president, Weiss as secretary, and Hart as treasurer; through this corporation by selling and by promoting ticket sales for air transportation in holding out, by radio and other forms of advertising, frequent and regular flights via North American; and through their partnership control of petitioner Republic Air Coach System, which carried on the accounting and fiscal services for and in behalf of the entire "Combine." The findings of the Board are amply sustained on the record here.

■ We entirely agree with the Board's conclusion that the course of conduct pursued by all petitioners in forming a single integrated carrier operated in regular air transportation without a certificate of public convenience and necessity violates Section 401(a) of the Act. And we have no doubt that participation in this venture by the non-carrier petitioners constitutes the sort of consolidation to operate separate properties that Section 408(a) (1) proscribes; furthermore, the acquisition of control of the carriers by the individual petitioners was properly determined to be a violation of Section 408(a) (5) of the Act.

■ Whether or not we would have gone so far as to revoke the Letters of Registration of the petitioner carriers is not open for discussion. It is clear the Board considered the record disclosed "multiple independent" violations, any one of which justified revocation of the petitioner carriers' Letters of Registration. Whether or not we would have entered the cease and desist orders as to all petitioners is not for us to say. That the Board possessed authority to take the actions complained of is clear.[18]

---

their acquisition of control of the irregular carriers; by the irregular carriers as having held out and operated excessive flights; by the irregular carriers as providing regular services through their combination and as failing to comply with ticketing, contracting, and reporting requirements.

18. Air Transport Associates v. Civil Aero-

nautics Board, 1952, 91 U.S.App.D.C. 147, 199 F.2d 181, certiorari denied, 1953, 344 U.S. 922, 73 S.Ct. 386, 97 L.Ed. 710; American Air Transport v. Civil Aeronautics Board, 1953, 92 U.S.App.D.C. 117, 206 F.2d 423; cf. American Airlines v. North American, 1956, 351 U.S. 79, 76 S.Ct. 600.

We note that in choosing the remedy of revocation the Board took into account

The petitioner carriers had applied for and received their Letters of Registration subject to all of the terms and conditions of the Act and the 1947 Regulations. Upon their compliance therewith depended even their permissive authorization to fly irregularly, and consequently, their exempt status. Even a certificated carrier—occupying a far more secure status—is subject to the Board's sanction in the event of violation, whether it take the form of revocation or otherwise.[19] The 1947 Regulations provided[20] that "Letters of Registration shall be subject to revocation, after notice and hearing, for knowing and willful violation of any provision of the Civil Aeronautics Act of 1938, as amended, or of any order, rule or regulation issued under any such provision, or of any term, condition, or limitation of any authority issued under said Act or regulations."

In addition to the reserved authority for revocation, the Board is possessed of yet other powers to bring about compliance[21]: "If the Board finds, after notice and hearing, in any investigation instituted upon complaint or upon its own initiative, that any person has failed to comply with any provisions of this chapter or any requirement established pursuant thereto, the Board shall issue an appropriate order to compel such person to comply therewith." A "cease and desist" order is clearly "appropriate," within the meaning of the Act.

We conclude that the Board's Order founded upon the violation of Section 401 of the Act and the regulations must be affirmed. The same is true with reference to violation by the non-carrier petitioners, of Section 408 of the Act and the regulations pertinent thereto. Our approval of the Board's action in revoking the carriers' Letters of Registration makes it unnecessary for us to consider in what further particulars the carrier petitioners may have violated various other provisions of the Act and of the 1947 Regulations, or whether or not, or to what extent they may also have violated the 1949 Regulations.[22]

---

its own record evidence of previous violations by various petitioners. For example, its Opinion noted that "Trans American is already the subject of a consent cease and desist order," Order No. E-6748, adopted August 28, 1952. In addition, the complaint in the enforcement proceeding charged that Stanley D. Weiss and James Fischgrund were for a long time prior to June 20, 1949, president and vice president, respectively, of Standard Air Lines, Inc., formerly a large irregular carrier whose Letter of Registration was revoked by the Board, June 20, 1949; that for a long time prior to June 5, 1950, R. R. Hart was president and Jack B. Lewin was traffic manager and a member of the Board of Directors of Aero-Van Express Corporation d. b. a. Viking Airliners, also known as Viking Airlines, a large irregular carrier whose Letter of Registration was revoked by the Board on June 5, 1950; that R. R. Hart for some time prior to February 27, 1951, was president and general manager of Oxnard Skyfreight, Inc., d. b. a. North American Airlines, subsequently North American Airlines, Inc., a large irregular carrier, whose Letter of Registration was suspended by the Board, February 27, 1951, and with consent of the carrier,

revoked by the Board on March 5, 1951; and that all of the irregular carriers, herein named, had suffered the revocation mentioned for knowing and willful violation of the Act and the Board's Economic Regulations, "involving the holding out and operation of regular services in air transportation between designated points without authority." The foregoing allegations were admitted by an amended answer filed in behalf of "Twentieth Century Air Lines, Inc., Trans National Airlines, Inc., Trans American Airways, Inc., North American Aircoach System, Inc., Stanley D. Weiss, James Fischgrund, Jack B. Lewin and R. R. Hart, individually and as partners, d. b. a. Republic Aircoach System, also d. b. a. Twentieth Century Aircraft Company, also d. b. a. California Aircraft Company and Stanley D. Weiss and James Fischgrund, as partners, d. b. a. Standard Airmotive Company."

19. 49 U.S.C. § 481(h).

20. § 292.1(d) (5).

21. 49 U.S.C. § 642(c); and as to violations of Section 408(a) of the Act, 49 U.S.C. § 488(a), see 49 U.S.C. § 488(e).

22. 14 C.F.R. Part 291 (1952).

We next consider petitioners' claim that this proceeding must be remanded because of the Board's failure to inquire into the qualifications of one of its members or because of its failure to disqualify that member from participation in the matter of which review is sought. The Board's Opinion was filed July 1, 1955. That very day petitioners had moved for the first time that Member Denny be disqualified "from further participation in this proceeding." In the motion petitioners requested a hearing before an Examiner with the right to call Board employees and others as witnesses. It will be noted, first, that petitioners in their motion recognized that "All formal steps prior to Board decision have been completed." Next, the Examiner's Initial Decision had been served February 14, 1955, and his findings and recommendations were fully available and known to petitioners and their counsel. The briefs had been submitted to the Board on April 5, 1955, and oral argument had been heard on May 11. As the Board's order indicates, most of the alleged facts dealt with situations said to have occurred a year or more previously. We need not describe them here, further than to say that Member Denny was alleged at various times to have made statements to various persons reflecting adversely on the operations and personnel of the North American group. Throughout the course of the proceedings after the purported occurrences, over a period of many months, petitioners took no step looking to the disqualification of Member Denny. Various proposals for "settlement" of the enforcement proceeding had been submitted by petitioners from time to time. As late as June 24, 1955, petitioners by letter of their counsel to the Board chairman, once again asked that "serious consideration" be given to North American's settlement proposal, and a conference was sought, all without the slightest reference to the alleged disqualification of Member Denny.

■ Under these circumstances we find no infirmity in the view expressed by the Board: "We think it is perfectly plain that respondents are not entitled to sit back until Board decision is imminent and at their convenience come forward with a claim for disqualification of a Board Member based upon alleged facts within respondents' knowledge long prior to consideration of this case by the Board." [23]

■ Petitioners further charge that they were unlawfully denied access to and use of documents, evidence and testimony in the Board's possession, and relevant to show that the Board's 1949 Regulations were arbitrarily designed to cut off essential route operations. Since our conclusions do not involve the 1949 Regulations, we need say no more than that staff studies, internal departmental memoranda, and recommendations of Board experts to its members ordinarily are not subject to discovery. Under the circumstances present here, the Board's denial of access to such material reflects no error. [24]

The order of revocation of Letters of Registration of the petitioner carriers, as set forth in paragraph 1, and the "cease and desist" orders as to all petitioners, as set forth in paragraphs 2, 3 and 4 of the Board's Order under review are affirmed, except so much of paragraph 3 as may relate to possible Section 408 violations by petitioner carriers. This disposition of the case makes it unnecessary to consider paragraphs 5,

23. Marquette Cement Mfg. Co. v. Federal Trade Commission, 7 Cir., 1945, 147 F.2d 589; cf. Federal Trade Commission v. Cement Institute, 1948, 333 U.S. 683, 700–703, 68 S.Ct. 793, 92 L.Ed. 1010; Hammond v. Hull, 1942, 76 U.S.App.D.C. 301, 306, 131 F.2d 23, 28, certiorari denied, 1943, 318 U.S. 777, 63 S.Ct. 830, 87 L.Ed. 1145; United States v. L. A.

Tucker Truck Lines, 1952, 344 U.S. 33, 36–37, 73 S.Ct. 67, 97 L.Ed. 54; Colonial Airlines Case, 1949, 9 C.A.B. 273.

24. United States v. Morgan, 1941, 313 U.S. 409, 422, 61 S.Ct. 999, 85 L.Ed. 1429; National Labor Relations Bd. v. Botany Worsted Mills, 3 Cir., 1939, 106 F.2d 263; Federal Trade Commission v. Cement Institute, supra note 23.

6 and 7 of the Board's Order under review. Our order of September 2, 1955, granting a partial stay of Board Order E–9360, as modified by Board Order E–9448, will be vacated in fifteen days.

Affirmed, as indicated.