UNITED AIR LINES, INC., Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

American Airlines, Inc., City and County
of San Francisco, Intervenors.

TRANS WORLD AIRLINES, INC.,
Petitioner,

v.

CIVIL AERONAUTICS BOARD,
Respondent,

American Airlines, Inc., City and County
of San Francisco, Intervenors.

Nos. 15414, 15415.

United States Court of Appeals
District of Columbia Circuit.

Argued March 22, 1960.

Decided May 19, 1960.

54

Mr. H. Templeton Brown, of the bar of the Supreme Court of Illinois, Chicago, Ill., pro hac vice, by special leave of court, with whom Messrs. Robert L. Stern, Chicago, Ill., and James Francis Reilly, Washington, D. C., were on the brief, for petitioner in No. 15,414.

Mr. James K. Crimmins, New York City, with whom Mr. Warren E. Baker, Washington, D. C., was on the brief, for petitioner in No. 15,415.

Mr. O. D. Ozment, Associate Gen. Counsel, Litigation and Research, Civil Aeronautics Board, with whom Messrs. Franklin M. Stone, Gen. Counsel, Civil Aeronautics Board, John H. Wanner, Deputy Gen. Counsel, Civil Aeronautics Board, Ulrich V. Hoffmann, Atty., Civil Aeronautics Board, and Richard A. Solomon, Atty., Dept. of Justice, were on the brief, for respondent.

Mr. Henry Geller, Atty., Dept. of Justice, also entered an appearance for respondent.

Mr. Howard C. Westwood, Washington, D. C., with whom Messrs. John W. Douglas and Edwin H. Seeger, Washington, D. C., were on the brief, for intervenor American Airlines, Inc.

Mr. Dion R. Holm, of the bar of the Supreme Court of California, San Francisco, Cal., pro hac vice, by special leave of court, for intervenor City and County of San Francisco.

Before WILBUR K. MILLER, DANAHER and BASTIAN, Circuit Judges.

BASTIAN, Circuit Judge.

Petitioners, United Air Lines, Inc. (United) and Trans World Airlines, Inc. (TWA), seek review of orders of the Civil Aeronautics Board (the Board) in the so-called New York-San Francisco Nonstop Service case. In that case, the Board amended a certificate of convenience and necessity of American Airlines, Inc. (American) so as to authorize American to operate nonstop airline service between New York and San Francisco. Theretofore nonstop service between those points was limited to United and TWA. Prior to the entry of the order complained of, intervenor American had authority to operate between New York and San Francisco but, under the then authority, was required to make at least one stop at an intermediate point.

The facts leading up to the order complained of are not in material dispute. It appears that, in a so-called West Coast case, American's then transcontinental route was extended from Phoenix, Arizona, to San Francisco and Oakland, California, with the condition that service be rendered to San Francisco only on flights which served Dallas or Tulsa, or some similarly located city. Thereafter, American filed its application for an amendment to its certificate to eliminate this restriction, and it is that application which was finally granted by the Board.

In the Denver Service Case, so-called, American sought unrestricted authority to operate between New York and San Francisco.

On November 14, 1955, the Board denied that request. Thereafter, American moved that the Board expedite that portion of the application which would permit nonstop operation between San Francisco and New York. This motion was denied, but in its order of denial the Board provided:

"[I]n view of the allegations contained in the petition and supporting documents the Board has directed the staff to review the problems of the air service pattern between New York and San Francisco and report the results of that study to the Board on or about December 1, 1957, so that it may examine the public need for an early hearing on the issue of nonstop service."

Shortly after the study had been completed, the Board set the matter down for expedited hearing and, after certain intermediate proceedings hereinafter referred to, the Board, by a divided vote, entered its award granting nonstop rights to American between the points indicated. Petition for reconsideration was duly filed, setting up various procedural as well as basic objections, all of which will be discussed hereinafter. This petition for reconsideration was denied. Whereupon, the present proceedings were instituted.

Motion was made in this court for a stay of the order of the Board but the motion was denied.

Because of our disposition of these proceedings, we believe it would be to the interest of all parties that we dispose of, first, the basic contentions of petitioners, and thereafter the procedural objections raised. If, on the limited remand which is to be ordered, the objections of petitioners are sustained, of course, the entire matter will have to be reopened but, if they are not sustained, either by the Commission or on appeal, the basic issues will have been determined and the case finally disposed of.

We have examined the contention of petitioners that the Board's findings and conclusions are arbitrary and capricious and not supported by substantial evidence in the record as a whole.

We think the Board's findings and conclusions are supported by substantial evidence in the record as a whole

and that the testimony before the Board and the examiner forms a proper basis for the conclusions reached by the Board. Argument is made that the examiner refused to reopen the record after the conclusion of evidentiary hearings to receive further evidence said to be then available as to cost of said operations and volume of traffic between the two points involved. The examiner held that there was no showing of substantial change in the matter since the close of the hearing and that, at any rate, the data referred to appeared in the official records before the Board. The examiner's rulings were upheld by the Board, and we see no error.

■ Petitioners further claim that they were entitled to have produced at the hearing before the examiner the report of the Board's staff in connection with request for expedited hearing. We do not agree with this contention. The study was made simply to assist the Board in determining whether the hearing should be expedited and had no bearing on the merits. Further, the request for production of the study was made at the close of the expedited hearing. As the examiner stated:

"Furthermore, what you are trying to do, you are trying to go back of the Board's action that it took originally in assigning this case for hearing.

"As I see it, in this stage of the proceeding, that is of no importance. The Board, acting within its own power under the act, assigned this proceeding for hearing and I fail to see where this is material at this time to the issues here."

There was no claim before the examiner that this study would reveal any data pertinent to the issues involved at the hearing stage. Cf. Deep South Broadcasting Co. v. Federal Com. Comm., 107 U.S.App.D.C. 384, 278 F.2d 264. And cf. North American Airlines v. Civil Aeronautics Bd., 1956, 100 U.S.App.D.C. 5, 12, 240 F.2d 867, 874. The motion for production in the instant case was obviously intended to "probe the mental processes" of the Board (see United States v. Morgan, 313 U.S. 409, 422, 61 S.Ct. 999, 1004, 85 L.Ed. 1429) and, under the circumstances of this case, as in North American, supra, "denial of access to such material reflects no error."

■ It is also urged that petitioners did not have adequate time for oral argument. However, this too was a matter in the discretion of the Board; and we see no abuse of that discretion. In addition, it is to be noted that petitioners were permitted to and did file briefs.

■ It is further urged that one of the members of the Board who voted with the three-to-two majority did not hear oral argument. This member of the Board had the record before him and the benefit of briefs, and again we find no abuse of discretion.

There are other errors complained of, all of which we have considered and none of which are sufficient to affect the basic finding of the Board.

■ One matter remains to be considered by the court. This has to do with that part of the petition for reconsideration filed by petitioners which requests the revocation of the order on the ground that American, the City of San Francisco, and others, engaged in *ex parte* activities which resulted in violations of the Board's Principles of Practice and Rules of Practice. It is claimed that petitioners were denied a fair hearing by reason of *ex parte* communications written or inspired by American, San Francisco and the Port of New York Authority, and by other efforts of those parties to bring influence to bear upon the Board. As summarized by the Board, the charges are as follows:

"The material affixed to the petitions is asserted to show (1) communications directly to the Board by the Mayor and other representatives of the City of San Francisco, (2) similar communications inspired by parties to the proceeding but written by non-parties, and (3) communications addressed to Members of

Congress by San Francisco, Port of New York Authority and, through third persons, by American, seeking intervention and the exertion of influence in a manner other than that permitted by Rule 14 of the Board's Rules of Practice. The letters are said to show further, by their own incompleteness, (4) other contacts made in person or by telephone with Members of the Board or its staff, the extent and significance of which 'can be no more than a matter of conjecture.' By affidavits and offers of proof, petitioners claim ability to prove that certain ex parte letters to the Board from travel agents, sent directly or through a Member of Congress, were solicited by employees of American.

"Petitioners claim that the alleged ex parte communications and efforts to solicit and inspire pressure resulted in violations of the Board's Principles of Practice and Rules of Practice, the legal effect of which is to necessitate vacation of Order E-14412 and a hearing de novo or, in the alternative, a reopening of the proceeding with a preliminary hearing to determine the facts as to ex parte activity and its effect upon the qualifications of the applicants and the Members of the Board."

So far as appears, there is no allegation [1] of corruption on the part of any staff member or Board member, and the Board, in considering the petition for reconsideration, found that no genuine complaint is made that petitioners were attempting to corrupt any member of the Board or its staff, or that it was improper for them to attempt to interest members of Congress to take a position with respect to this proceeding in the manner permitted by the Board's Rules. The Board found that the letters complained of were in no sense covert and that they neither requested nor were given confidential treatment by the Board.

The Board reviewed the several charges and concluded that the conduct of the Port Authority was affirmatively shown to be beyond reproach. The allegations concerning the City of San Francisco were said to present a more troublesome problem but the Board concluded that the violations, if proved, would not justify removal of the competitive non-stop service authorized in the proceeding. The Board said that, while they thought it unfortunate that San Francisco supplemented its filing on record by informal communications, there was nothing contained in the transmittals which could not have been brought to the Board's attention by the filing of a motion to expedite the proceeding.

The Board reviewed at length the allegations that the City of San Francisco had committed some violations and held that the deviation from Rule 2 of the Board was not so egregious as to require a sanction which would deprive the Bay Area of air service found needed upon a full evidentiary hearing.

With regard to the solicitation by employees of American of letters from travel agents and others, the Board held that this does indicate some violation of the rule, though not of such character as to vitiate the effect of the carrier's qualifications.

And so, with regard to all the complaints, the Board concluded that a careful review of the charges, and construing all pleaded allegations in favor of petitioners, failed to reveal any matter which would warrant vitiation of the proceeding or further investigation. The Board thereupon denied the petition for reconsideration based upon violation of its rules. It is to be noted that this denial was by a vote of two members of the Board as against one dissenting member. The other two members of the Board took

---

1. Indeed, United Air Lines tells us in its brief, p. 26: "Petitioner repeats what it has said before, that it accuses no member of the Board either of corruption or even of having consciously yielded to the pressures to which he was subjected * * *."

58

no part in the decision. The dissenting member would direct further inquiry into the allegations concerning American before making final disposition of the case. This member stated that, while he did not believe that the allegations of petitioners unequivocally established serious violations of the Board's Rules or Principles of Practice, there was sufficient evidence of conduct which was at best marginal to justify, and indeed require, further inquiry by the Board. He further stated that the Board had stated no good reason for not directing such an inquiry, and that the integrity of the processes of the Board was too important for this matter to be summarily dismissed.

 In its brief in this court, the Department of Justice took the position, contrary to that of the Board, that the Board was required to conduct a further inquiry into the allegations concerning the actions of American and its responsibility for the actions of others in connection with alleged violations of the rules of the Board proscribing attempts to bring pressure to bear upon the Board or its staff designed to influence the Board's judgment in the case. It urged that the Board was under an independent affirmative duty to ascertain the extent of such violations and to preserve the integrity of its own administrative process by holding a hearing to determine all the relevant facts. The Department refers to Sangamon Valley Television Corp. v. United States, 1959, 106 U.S.App.D.C. 30, 269 F.2d 221,[2] and, while recognizing that the facts in that case are distinguishable from the present case, contends that the broad principles there enunciated appear to be applicable here. We believe this position to be well taken and, accordingly, these cases will be remanded to the Board for the limited purpose of holding a hearing to determine, with all convenient speed, the relevant facts on the question of whether the Board's rules were so violated as to require a setting aside of the order.

We, of course, intimate no view as to the charges of violation of the Board's Rules or the effect to be given by the Board to any violation, should it be established that there were such. Nor do we think that the American certificate should be set aside pending the hearing.

Our order will provide that the *status quo* is to be maintained, and that we retain jurisdiction of these cases pending receipt of the findings and final report of the Board on the question of the alleged violations complained of.

Remanded accordingly.

---

2. See also Massachusetts Bay Telecasters v. Federal Com. Comm., 1958, 104 U.S.App. D.C. 226, 261 F.2d 55.